**HOUSTON MARITIME ASSOCIATION et al., Appellants,**

**v.**

**SOUTH ATLANTIC & GULF COAST DISTRICT OF the INTERNATIONAL LONGSHOREMEN'S ASSOCIATION et al., Appellees.**

**No. 13975.**

Court of Civil Appeals of Texas.

Houston.

April 18, 1963.

Rehearing Denied May 23, 1963.

Robert Eikel, Theodore Goller, Jr., Houston, for appellant.

Sewall Myer, Houston, for appellees South Atlantic & Gulf Coast District of International Longshoremen's Ass'n Local Unions Nos. 1351, 1273 and 1665.

Mandell & Wright, Arthur J. Mandell, Houston, for appellee I.L.A. Local 872.

BELL, Chief Justice.

Houston Maritime Association, Galveston Maritime Association, both trade associations of steamship agents, owners and operators, Southern Stevedoring Co., Inc., herein called Stevedoring Co., and Lykes Bros. Steamship Co., Inc., herein called Lykes, sued the South Atlantic & Gulf Coast Longshoremen's Association, herein called International, and Clerks and Checkers Locals Nos. 1351 and 1665, Longshoremen's Locals Nos. 872 and 1273, and certain named officers and agents of said unions. Appellants sought a declaratory judgment as to the meaning of the contract between them and the Clerks and Checkers Unions that was in force in January, 1954, and also sought damages against appellees for alleged breach of that contract and an injunction against further work stoppages during the life of the contract. Trial was to a jury and the trial court, based on the jury verdict, rendered judgment that appellants take nothing.

Appellants' theory of liability on the part of appellees is that the contract between them and the Clerks and Checkers Unions authorized them to assign one timekeeper to keep time on more than one ship at the same work period if one person, in the light of all circumstances, could do the work. Further they say that both the contract with the Clerks and Checkers and that with the Longshoremen prohibit work stoppages. It is contended that the Stevedoring Co., on January 25, 1954, assigned one timekeeper to keep time for two gangs of Longshoremen loading cargo on the Steamship Reuben Tipton and one gang loading cargo on the Steamship Sue Lykes, ships belonging to Lykes, that were in adjacent berths in the Port of Houston; that the timekeeper, on instructions from the business agent of Local 1351, refused to keep time on the SS Sue Lykes, and that the Clerk and Longshoremen on the Sue Lykes refused to work unless a separate timekeeper was assigned to this ship and that such refusal was at the order of the officers of International and Locals 1351, 872 and 1273. The Sue Lykes was not completely loaded with available cargo and had to sail, after some delay, without all scheduled cargo being aboard.

The position of International and the Clerks and Checkers Unions is that there must be one timekeeper for each ship and that they had nothing to do with the time-keeper refusing to work both ships but that Mr. Vestal, the timekeeper, did it on his own responsibility. Locals 872 and 1273, the Longshoremen's Locals, deny any work stoppage in connection with the loading of the Sue Lykes because of any desire to force employment of a separate timekeeper for the Sue Lykes, but say work of loading was not continued because after one work period there was no Clerk to point out the cargo in the warehouse that was to be loaded on the Sue Lykes, and further that the

Stevedoring Co. representative failed and refused to point out the cargo to be loaded.

The jury answers were in substance as follows:

1. Special Issue No. 1—International and Local 1351 entered into a conspiracy to effect work stoppages for the purpose of compelling Houston Maritime Association, Lykes and the Stevedoring Co. to hire a timekeeper for each ship.

2. Special Issue No. 2—The failure to load the remainder of the cargo on the Sue Lykes was not the direct result of such conspiracy.

3. Special Issue No. 3—Stevedoring Co. did not request Local 872 to furnish a gang to load the remainder of the cargo on the Sue Lykes.

4. Special Issue No. 5—Stevedoring Co. made no request of Local 1273 to furnish a gang to load the remainder of the cargo on the Sue Lykes.

5. Special Issue No. 7—Lykes could not have avoided the damages sustained by reasonable effort and expense.

6. Special Issue No. 8—Mr. Casey, Superintendent for Stevedoring Co., failed and refused to show the gang of Longshoremen from Local 872 the cargo that was to be loaded on the Sue Lykes.

7. Special Issue No. 9—Such failure and refusal on the part of Mr. Casey was the reason for the gang not loading the remainder of the cargo on the Sue Lykes.

8. Special Issue No. 10—Damages to Lykes was found to be $1500.

The other issues were not answered as it was unnecessary in the light of the answers given by the jury to the enumerated issues.

Appellants, after the verdict, filed a motion asking the court to disregard the jury's answers to Special Issues Nos. 3, 8 and 9, and to render judgment on the remainder of the verdict in their favor, after finding as a matter of law that Local 872 refused to comply with the request of Stevedoring Co. for a gang to load the remainder of the cargo.

For reversal of the trial court's judgment, appellants complain there is no evidence to support the jury's answers to Special Issues Nos. 2, 3, 8 and 9 and that as a matter of law the cause of the failure to load the remainder of the cargo was the conspiracy found by the jury in answer to Special Issue No. 1. Too, they complain the trial court erred in refusing to give a declaratory judgment that the contract did not permit appellees to refuse to work unless one timekeeper was hired for each ship. Complaint is also made of the refusal of an injunction to forbid refusal to work because of the refusal to hire a timekeeper for each ship.

█ In determining whether there is any evidence of probative force to support the jury's answer to an issue, we must discard all evidence that militates against it and analyze that which is favorable to the answer and if from that which is favorable to it, together with all reasonable inferences that might be drawn therefrom, we conclude that reasonable minds might reach the answer the jury did, then there is evidence of probative force supporting the answer. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Ford v. Panhandle & S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561. We should probably note here, because appellants cite In Re King's Estate, 150 Tex. 662, 244 S.W.2d 600, and Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814, that we construe the Points of Error to be no-evidence points because they complain of the action of the trial court in not disregarding certain of the jury's answers and after disregarding them in not rendering judgment for them. While in some of the points of error appellants also state the evidence is insufficient to support the answers, or, what is the same thing, that the answers are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust, they tie such assertion in with the procedural step

calling for the court to disregard certain answers and render judgment in their favor. They are therefore no-evidence points. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361. If there is some evidence of probative force, a court may not disregard an answer and render judgment contrary to it but can only set it aside and grant a retrial.

It is established by the evidence that on January 25, 1954, Lykes had in the Port of Houston the SS Reuben Tipton and SS Sue Lykes. They were tied up in adjacent berths. A Mr. Vestal, who at that time was regularly employed by Lykes, and who was a member of Local 1351, was assigned by Mr. Eitelbach, who was then stevedoring supervisor for the Stevedoring Co., to keep time on the Tipton and the Sue Lykes. The first work period was from 7 P.M. to 12 P.M. on the 25th. Two gangs of Longshoremen were working on the Tipton and one on the Sue Lykes. The gang on the Sue Lykes was from Local 872. A Mr. Nicolini, who worked regularly for Lykes, and who was a member of Local 1351, was the Clerk assigned for this work period on the Sue Lykes. Mr. Vestal kept time on the Tipton but refused to keep time on the Sue Lykes for the same work period. The gang on the Sue Lykes worked without a timekeeper until 12 P.M. Mr. Nicolini worked as a Clerk with this gang until 12 P.M. After talking with the business agent of Local 1351, Mr. Nicolini went home. The gang took off for its meal at 12 P.M. They did not load cargo at the next work period which began at 1 A.M. Neither did any gang of Longshoremen work for the other work periods on January 26. Thereafter the Sue Lykes sailed without taking on any cargo except that loaded during the 7 P.M. to 12 P.M. work period on January 25. The executive committee of Local 1351 met at the docks just after midnight on the 25th. Mr. Nelson, president of Local 872, went to the docks, but not, according to his testimony, with that committee, but on his own.

The above facts seem not to be in dispute, but beyond this agreement ends and dispute as to other facts appears. We must, therefore, examine the testimony which is favorable to the jury's answers.

Mr. Vestal, the timekeeper for the Tipton, was the first witness after the contracts were proven, he being called by appellants at trial in July, 1961. In January, 1954, he was regularly employed by Lykes. When he was assigned to work both ships he took the position that under the contract with the Clerks and Checkers each ship must have a separate timekeeper. He did, on the night of January 25, call Mr. Morrow, the business agent for Local 1351, and after talking to him he kept time only on the Tipton. He knew it was the Union's position as well as his own that there should be a timekeeper on each ship. He had never known one timekeeper to work two ships. Mr. Morrow testified that Mr. Vestal called him and asked about whether to keep time on the Sue Lykes and Mr. Morrow told him to use his own judgment. He did not instruct Mr. Vestal not to work the Sue Lykes. Mr. Vestal, on his own responsibility, decided not to work both ships.

Mr. Nicolini, the Clerk on the Sue Lykes until midnight of the 25th, testified he and the gang of Longshoremen worked until midnight though there was no timekeeper. He, in January, 1954, was a member of Local 1351 and was regularly employed by Lykes. About 8:30 he met Mr. Vestal and Mr. Vestal asked him if there was a timekeeper on the Sue Lykes and he informed him there was not. Mr. Nicolini went on back to work. About 11:30 he called Mr. Morrow. Morrow told him they were not supposed to work without a timekeeper, but for him to use his own judgment, so at 12 o'clock he went home. The next morning beginning at 8 o'clock he went to work at the docks and was available to work on the Sue Lykes but was not asked to and was not asked to point out any cargo. He had never known a timekeeper to work two ships. It should be noted the Clerk

is the person looked to by the Longshore-men to point out the cargo stored in the large warehouse that is to be loaded on a particular ship. The large warehouses contain many types and tons of cargo intended for different ships. If it is erroneously loaded on a ship it must then be unloaded. Though Mr. Nicolini was at the docks all day January 26, he did not see any gangs of Longshoremen from Locals 872 or 1273. The significance of this is that there was testimony that there were gangs there on the 26th at the dock for the 10 o'clock and 3 o'clock work periods, supposedly in response to an order put in for them by Mr. Casey, of Stevedoring Co. If the gangs had reported it would be his duty to point out to them the cargo to be loaded. He actually went down on the dock to the Sue Lykes and didn't see any gangs. If there had been any gangs there he would have worked.

Mr. W. J. Nelson, president of Local 872, was at the docks at 1 A.M., January 26, when the next work period began. There was no Clerk as Mr. Nicolini had gone home. Whether all of the gang of Longshoremen was there that had worked until 12 o'clock is not certain. Whether the pileman, the person to whom the Clerk would have pointed out the cargo, was the same for each work period is not shown. Nelson testified he was on the docks but he was not with the committee from Local 1351 and did not confer with them. He talked to Mr. Casey of the Stevedoring Co. (Mr. Casey was deceased at the time of trial). Mr. Casey ordered the gang of Longshore-men that was there to work beginning at 1 o'clock on the 26th to go home. No question of there being no timekeeper on the Sue Lykes was involved in their talk. They discussed that there was no Clerk available. Mr. Casey did not tell him the cargo to be loaded had already been pointed out to the pileman in the Longshoreman gang. He told Mr. Casey the men were ready to work when someone gave them the cargo to be loaded. Some members of the gang were aboard ship ready to work.

He talked to the gang foreman, Richard Franklin, and Franklin told him there was no cargo. When he told Mr. Casey the men were ready to work if someone would point out the cargo, Mr. Casey said he would give them the cargo. Mr. Casey, without pointing out the cargo, went into the office, stayed a few minutes and came out and told Nelson to send the men home. He did not get an order for gangs of Longshoremen for the next day. Neither he nor his Local 872 had anything to do with the controversy between appellants and Local 1351.

Mr. J. E. Williams was Assistant Business Agent of the Longshoremen's Local 1273. Records were kept of all orders for Longshoremen from either Local 1273 or 872. He was on duty, on both January 25 and 26. The records kept do not reflect that any gang of Longshoremen from either local was ordered for January 26. The records would reflect any gang ordered from either local because work is divided between the locals on a 50–50 basis and the business agents of each local confer about gangs ordered so the records may be kept. A gang was ordered for the Sue Lykes for the 7 P.M. work period of January 25. An employer ordering the gangs could and probably would call both locals, but the business agents would inform one another so they could keep their records as to which local furnished the gang.

Mr. J. H. Washington, Secretary of the Board of Directors of Local 872, testified the records for Local 872 were kept in the same manner as those of Local 1273. However they had been unable to find the records for 1954. There had been a fire and many records were destroyed.

We have not given the testimony supporting appellants' position because it is not material to a determination of the question before us; that is, whether there is evidence of probative force to support the jury's answers favorable to appellees. We will state, however, there is evidence contrary to that we have specifically noticed which does support appellants' theory that the

failure to work on the Sue Lykes might have been due to the efforts of appellees to force the hiring of a separate timekeeper on the Sue Lykes. At least, there are evidentiary facts from which the jury could reach such a conclusion.

■ On a basis of the evidence the jury could well conclude that appellees International and Local 1351 did conspire to effect work stoppages in order to force hiring a timekeeper for each ship. It does now follow, however, that the work stoppage on the Sue Lykes resulted from such conspiracy. Viewing the above recited evidence most favorably to the jury's answers, as above noted, the jury could well have concluded the failure of the Longshoremen to work for the work period beginning at 1 A.M. on January 26, was due to the failure and refusal of appellants' representative to point out the cargo to be loaded. There is no dispute that the gang worked without a timekeeper until midnight. An argument then arose as to whether the gang that was to work the next work period knew the cargo to be loaded. That they know this was important as above pointed out. If the testimony above noted is to be believed, there was no one who would point out to the gang what the cargo was and the gang did not know the cargo. There was contrary evidence, but the jury is the proper body to resolve the conflict. As to the absence of loading work the next day the above testimony, if believed, would show it was due to the fact there were no additional gangs ordered for the 26th or no Clerk ordered to work with a gang. Whether gangs were ordered and were present on the 26th is a disputed issue. The jury, supported by evidence of probative force, resolved the conflict favorably to appellees.

Appellants finally contend that the court erred in not granting an injunction enjoining appellees from work stoppages because of the failure or refusal to hire a timekeeper for each ship and it was error to refuse to give a declaratory judgment that the contract at issue did not permit appellees to refuse to work unless there was a timekeeper for each ship.

■ The jury having found in the case that no work stoppage resulted from the dispute over whether a timekeeper was required for each ship, there was no error in refusing an injunction. Also, the alleged work stoppage occurred in January, 1954. The case was not tried until July, 1961. The original contract involved was for the two year period from October 1, 1951 to September 30, 1953. By an amendment it was renewed on January 13, 1954, with some amendments. No term for the renewal as amended was specifically stated. The agreement to renew it would include a renewal for another two year term. The contract involved would have expired September 30, 1955. There is no showing in the record that the term had been extended so that the contract was in force at the time of trial. There was, therefore, no error in not entering a declaratory judgment.

The judgment of the trial court is affirmed.