## EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Appellant,

v.

### Marion W. SANDERFER, Appellee.

No. 14382.

Court of Civil Appeals of Texas.

Houston.

June 25, 1964.

Rehearing Denied Sept. 24, 1964.

Vinson, Elkins, Weems & Searls, Houston; Thomas B. Weatherly, Sam W. Davis, Jr., Houston, of counsel, for appellant.

Eastup & Kroll, Gordon J. Kroll, Houston, for appellee.

BELL, Chief Justice.

This is a case where the employer, in agreement with the insurer, made a workmen's compensation insurance policy applicable to its executives. The appellee was vice president in charge of drilling and

drilling superintendent for Henderson Drilling Company. He was injured when he fell out of a tree while he was on a deer hunt and it is undisputed that his injuries resulted in total permanent disability. The court's judgment was in the amount of compensation, at the maximum rate, allowable for such disability and for medical expenses which he had paid in an amount in excess of $14,000.00. The attorneys for appellee were allowed a recovery of 30% of the total recovery by appellee including the recovery for medical expenses.

We have three questions to decide: 1. Whether there was evidence of probative force to support the jury's finding that appellee was acting within the course and scope of his employment at the time of his injury; 2. Whether it was error to admit in evidence a letter written to appellant by Mr. Henderson, the president of Henderson Drilling Company, after the accident, and, if it was error, was such error harmful; and 3. Whether attorneys' fees could encompass any part of the recovery for medical expenses.

■ There is a Point of Error asserting the trial court erred in rendering judgment for appellee when the finding of the jury that appellee was in the course and scope of his employment was against the great weight and preponderance of the evidence. Since the complaint is addressed to a procedural step involving no evidence, this is but a no evidence point. McDonald v. New York Central Mutual Fire Ins. Co., Sup., 380 S.W.2d 545; Calvert, 38 Texas Law Review 361; Houston Maritime Ass'n v. South Atlantic & Gulf Coast District, I.L.A., 367 S.W.2d 705 (C.C.A.), no writ hist.

Mr. Sanderfer was a minority stockholder in the Henderson Drilling Company. He had been with the Company since its organization fourteen years before trial. He had worked for Mr. Henderson, the president and majority stockholder, for ten years before the organization of the Drilling Company. The Drilling Company's business was drilling oil wells. Appellee's duties were supervision of drilling activities, assisting in trying to get jobs for rigs, office work as well as field work. In his work in supervising the drilling of the wells a part of his job was "good will" toward the men working for the Company that Henderson Drilling Company was doing the work for. In performance of his duties in trying to get jobs for his company he entertained representatives of other companies by taking them to lunch, on fishing trips and in other ways. He had a monthly expense account of $250.00 and in addition had credit at private clubs. He had a Company automobile with a gasoline credit card. He was subject to call 24 hours a day.

Appellee's injury occurred November 18, 1961. His spine was injured in the accident so that he is paralyzed from the waist down. At the time of the injury he was deer hunting on a lease belonging to "Joe's Rental Tool Service". This company rented oil tools to people including Henderson Drilling Company. Prior to this appellee had taken people on hunting and fishing trips. In testifying as to why he happened to go on this trip appellee testified that two or three weeks before Mr. Henderson first mentioned "the fellows that were going to be there." He went because he was told to go by Mr. Henderson on November 16, 1961. He would not have gone if he had not been told to. About two or three weeks after Mr. Henderson first mentioned his going he talked to Mr. Henderson again. He, after attending the funeral of a friend, went to the office and Mr. Henderson stated, "I thought you would be at the deer camp this morning." He stated he did not feel like going. A little later that day Mr. Henderson told him business was slow. It might be noticed here that other testimony showed this type of business was generally slow and competition for drilling jobs was keen. Mr. Henderson told him, "The fellows that would be up there and it would be good to be around them, I should go on up there and be with them to create good will." Appellee went up there later that day and got to the camp between 8 and 8:30

p. m. Also up there were persons the witness named. One was a Mr. Mire who worked for a company that had not done business with Henderson Drilling Company but Henderson Drilling Company was working at getting some business from his company. Another was a man named Hurley who worked for Pan American for whom Henderson Drilling had done work. Another was a man named Moore who worked for Humble. Henderson Drilling had done work for Humble. All of these men, except Moore, were in a position to kill Henderson Drilling Company's chance of getting business.

After getting to the lease he had no chance to talk to anyone about business. He planned to stay several days. The next morning he took several of the people to their deer stand and then went to his.

The above is the substance of appellee's testimony on direct. On cross-examination he testified the others up there had been invited by the owner of Joe's Rental Tool Service and he was "partially" a visitor of theirs. He had not had time to contribute anything toward the food. He had taken three bottles of liquor but it had not been opened before he was hurt. His company rented tools from Joe sometimes. When asked if Joe wanted to entertain him because Henderson gave him business, he answered, "Yes, and also to give me an opportunity to be with these other fellows, too. It was kind of 'you scratch my back, I will scratch yours.'" When asked substantially the same question again, appellee answered, "Yes, and also so I could be in the presence of those other fellows who were influential. That was understood between him and me before I went they would be there." He knew who would be there or he wouldn't have gone. He discussed this matter in detail with Mr. Henderson. Mr. Henderson "told me it would be a good idea for me to go up there; there were fellows that would be there it wouldn't hurt to be around; they could do us some good * * *. He didn't chase me up there.

He told me it would be a good idea for me to go."

Mrs. Sanderfer testified that appellee usually came home from the office at between 4:30 and 5. On the day he went to the hunting camp he came home about noon. Appellee stated to her, in response to her inquiry as to why he was home early, that Mr. Henderson suggested he go hunting because there were going to be some men there that he could work with in order to get some business for the company.

Mr. Henderson testified by deposition. His testimony corroborates appellee's testimony as to salary, expense account and credit available. He was asked if he had ever made any written or oral statement regarding appellee's injury and the witness' knowledge as to the purpose of his "being up there". The witness answered nothing other than he wrote the insurance company (appellant) shortly after the injury. The letter was then offered. When the deposition was read at the trial and the letter was offered, appellant objected to the letter on the ground it was hearsay. The letter states that appellee was Mr. Henderson's assistant who was hurt while hunting on Joe's Rental Tool lease. It then states, "Since I suggested to Mr. Sanderfer to go up there and hunt with this group which some of them were Pan American employees, namely Mr. Cabness and Mr. Hurley, with whom we have a rig working for and I wanted him to promote good will and since that being the case, I feel that he should be covered by Workmen's Compensation." The letter was dated November 24, 1961.

The witness testified appellee was on call 24 hours per day. At the time Mr. Sanderfer "went up there" Mr. Henderson anticipated he would promote good will. Appellee mentioned to him that he would like to go up and go hunting and told Mr. Henderson "those fellows" were going to be there. Mr. Henderson thought it was a very good idea and told appellee to go and stay as long as he wanted to.

A question referred to the letter as indicating the witness wanted appellee to promote good will by going on the trip and then the query was made as to how you promote good will. The witness answered "Well, up there like hunting with those guys and playing a little pitch or poker or drinking a little whiskey and just cutting up and telling lies about how big the deer was that you didn't get * * *. In other words, it is just a chance to get better acquainted with them."

At the trial appellant introduced part of the deposition and by this part the witness testified that when appellee mentioned going hunting appellee told him about "some of the Pan American men and others like that, who were going to be up there, and I told him it would be a good idea * * * it would be a good time for him to go." The witness testified the people were those he had gotten business from and he hadn't lost any he had gotten from them but "you are always on your toes * * * I mean keeping up your contacts. They say 'out of sight, out of mind,' you know. You want to be around every once in a while."

■ Viewing the evidence most favorably to the verdict, as we must, and drawing every reasonable inference therefrom that is favorable to the verdict, there is clearly evidence of probative force to support the conclusion that at the time of the injury appellee was acting within the course and scope of his employment. With the approval and suggestion of Mr. Henderson, he went to the lease to hunt and otherwise associate with persons who furnished business to Henderson Drilling Company. He was promoting good will for his company. This was one of his duties. This suffices to support course and scope of employment. Constitution Indemnity Company v. Shytles, 47 F.2d 441 (5th Cir.); Texas Employers' Insurance Ass'n v. Chitwood, 199 S.W.2d 806 (C.C.A.), no writ hist. The fact that appellee was also being personally entertained by Joe's Rental Tools representatives does not destroy his being at the same time in and about his master's business. Associated Indemnity Corporation v. Billberg, 172 S.W.2d 157 (C.C.A.), no writ hist.; Maryland Casualty Company v. Stewart, 164 S.W.2d 800 (C.C.A.), ref. w. m.

■ Appellant is in no position to complain of the attorneys' fee allowed appellee's attorney. The judgment awarding appellee's counsel 30% of appellee's recovery can in no way increase appellant's liability. Appellee contracted to pay out of his recovery from appellant. The judgment against appellant was only for medical expenses and compensation the statute makes it liable for. Texas Indemnity Insurance Company v. Bush, 163 S.W.2d 224 (C.C.A.), writ ref.

■ The letter introduced, being an out of court declaration, was of course hearsay, and, under the facts here shown did not come within an exception to the hearsay rule, and should not have been admitted. However, considering the whole record, we are of the view it was not such error as was reasonably calculated to cause or probably did cause the rendition of an improper verdict or judgment.

The letter was proved up and introduced at first as a part of the deposition of Mr. Henderson. Mr. Henderson was there for cross-examination. He was cross-examined, not specifically with regard to the letter, but with regard to facts that were also shown in the letter except for the opinion expressed in it. We do not mean that cross-examination operated to waive the complaint, but where, as here, the witness gave original evidence that was the same in substance as the contents of the letter, there is not the same situation as if the erroneously admitted letter stood alone in support of asserted facts. In the deposition introduced Mr. Henderson testified in a manner so as to show that appellee was on the hunt at his suggestion to promote good will for Henderson Drilling Company. Actually, therefore, the vice that taints usual out of court statements was absent, that is, there was opportunity for cross-examination and

there was testimony under oath concerning facts also reflected by the letter.

There was another available objection in the light of the fact that Mr. Henderson testified, that is, the letter bolstered his testimony when it had not been attacked. No such objection was made.

Insofar as the letter contained an expression of opinion it was subject to such an objection. None was made. The opinion, however, was concerning a matter of law. Mr. Henderson did not purport to be a lawyer and obviously was not. Too, the issue submitted merely inquired as to whether as a fact at the time of the injury appellee was acting within the course and scope of his employment.

The judgment of the trial court is affirmed.