**HOUSTON TRANSIT COMPANY,**
Appellant,

v.

**Mrs. Frank H. CHARON et vir, Appellees.**

**No. 14417.**

Court of Civil Appeals of Texas.

Houston.

May 6, 1965.

Roger R. Wright, Jr., Houston, Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellant.

Robert L. Steely, W. James Kronzer, Houston, Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellees.

BELL, Chief Justice.

Mrs. Charon was injured on May 16, 1961 when the automobile she was driving was hit in the rear by a bus operated by a driver for appellant. Her automobile and the bus were both headed in a southerly direction on Milam Street. She had just stopped for a stop sign at the intersection of Milam and West Alabama. Appellees recovered judgment in the amount of $14,-520.00.

The jury answered favorably to appellees the following issues:

1. Appellant operated its bus, just before the collision, with inadequate air pressure in its braking system.

2. This was negligence.

3. This negligence was a proximate cause of the collision.

4. Appellant's driver failed to properly observe the pressure gauge before the collision.

5. This was a proximate cause of the collision.

■■ Appellant complains, as to each issue, that there was no evidence to support said issues. In passing on these points, we consider only that testimony in support of the findings of the jury and if considering such together with all reasonable inferences that may be drawn therefrom a reasonable

mind could reach the same conclusion as did the jury, there was evidence of probative force. Conflicts in the evidence must be disregarded. The credibility of the witnesses was solely for the jury.

■ Appellant also contends that the trial court erred in not disregarding the answer of the jury to each of the above issues because there was "insufficient" evidence to support them. As these points are addressed to a procedural step that involves the test of "no evidence" we must treat them as nothing more than "no evidence" points. McDonald v. New York Central Mutual Fire Insurance Company, 380 S.W.2d 545 (S.Ct.); Houston Maritime Association v. South Atlantic & Gulf Coast District, I.L.A., 367 S.W.2d 705 (C.C.A.), no writ hist.

■ The additional point of error that "The Court erred in overruling defendant's motion for new trial or remittitur" is too general to be considered. Texas Employer's Insurance Ass'n v. Hawkins, 369 S.W.2d 305 (S.Ct.). Too, the point is not briefed and is, therefore, waived.

Before looking at the testimony it is observed that appellant contends the evidence conclusively establishes the collision resulted when there was a sudden failure of the air brakes on the bus. There is testimony, which if accepted by the jury, would show that the air compressor that builds up pressure in tanks that supply air to the braking system broke suddenly, causing immediate loss of all air. There was a hole in the block of the compressor. One of appellant's employees testified this would cause an immediate loss of air from the tanks because there was no check valve to keep the pressure in the tanks.

Appellees' theory is that there is testimony from which a jury could conclude that the loss of air in the tanks was not sudden but was gradual and that if the operator of the bus had properly observed the gauge he would have noticed the air pressure was dropping and would have ceased driving the bus. Undoubtedly the bus was being operated with inadequate air pressure.

A portion of the deposition of Mr. Steelman, the bus operator, was read in evidence. He testified that when he was 60 or 65 feet behind Mrs. Charon he put his foot on the brake and he heard a noise that sounded like air rushing out of a tube that has had a nail pushed into it, and the brake did not work at all. He further stated air pressure is built up in the air tank by the compressor to about 90 pounds. If the air is gone the brakes lock automatically.

On trial Mr. Steelman testified in person. He testified that at all times the air pressure was over 60 pounds. The pressure must be about 60 pounds for the brakes to work correctly. They won't try to operate on less than 60 pounds. When he applied the brakes and heard the noise, he noticed the needle on the air gauge was going; was no stopping to it. This gauge shows the pressure of the air in the air tank. Each stop uses part of the pressure built up in the tank. A number of stops may be made without the compressor adding to the reserve that has been built up in the tank. Opening the door also uses part of the air, thus reducing the pressure.

Mr. Allen, a repairman for appellant, who replaced the compressor on the bus after the collision, testified by deposition. He testified there was a hole in the block of the compressor, caused by a broken rod. It couldn't be repaired so it was replaced. He had little independent recollection but testified from the "Request for Inspection" which showed a replacement of the air compressor. He testified the compressor built up air in the air tank while the motor of the bus is running. When the pressure gets to a certain number of pounds in the air tank the compressor cuts off. It has a pop-off valve. If the pressure tank has air in it, it will hold the air even though the compressor is not working. The pressure built up in the tank registers on the gauge in the bus. The pressure will remain in the tank until it is used up through use

in operating the bus. The inspection request only showed the compressor was replaced. It showed nothing with regard to the air tank.

Mrs. Charon testified that after the collision she talked to the bus driver and he told her that "he had had some trouble with his brakes." The driver got on the bus and said "that he was supposed to have a certain pressure on his brakes but that he didn't have that much * * * He said he had five or ten pounds."

 We note impeachment testimony to the effect that previously the witness had not stated the above. However, this goes only to the weight the jury should give her testimony. It is immaterial to our determination of whether there is evidence of probative force.

Some testimony of Mr. Parker, a witness for appellant, was that there was no valve on this particular bus that would hold the air in the tank if the block of the compressor had a hole in it but the air would suddenly rush out of the tank. However, at one point in his testimony he stated that if the air compressor failed there would remain several stops in the tank. If the pressure dropped below 60 pounds the rear wheels would lock.

The investigating officer testified the driver told him, "My air leaked down and would not build up." He also testified he tested the brakes but could not build up enough pressure to make the brakes work but there was still some pressure. His recollection was the gauge registered 25 to 30 pounds. He had no better recollection of the exact pounds of pressure than 25 to 30, but he could not be specific.

Viewing the above testimony which is favorable to the jury verdict and disregarding such little as we have noticed that is unfavorable and such as we have not noticed but which is also unfavorable, we are of the view that a jury could reasonably conclude that the air pressure was reduced gradually and that if the driver had observ-

ed the gauge he would have discovered it. The result is that there is evidence of probative force to support the findings that driving with inadequate air pressure was negligence that was a proximate cause of the collision and that the failure to properly observe the pressure gauge was also a proximate cause of the collision.

Affirmed.