The AETNA CASUALTY & SURETY COMPANY, Appellant,

v.

Evelyn BERRY and Durwood Douglas Berry, Appellees.

No. 21803.

United States Court of Appeals Fifth Circuit.

Aug. 9, 1965.

Cecil D. Redford, Lewright, Dyer & Redford, Corpus Christi, Tex., for appellant.

Bob J. Spann, McDonald & Spann, Corpus Christi, Tex., for appellees.

Before TUTTLE, Chief Judge, and BROWN and FRIENDLY,* Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Aetna appeals from a judgment [1] upon a jury verdict awarding Workmen's Compensation Insurance benefits to the widow and minor son of Lawrence E. Berry who was accidentally killed while loading a rifle into his airplane. The issues, controlled by Texas law are (a) coverage and (b) scope of employment. We affirm.

Since the scope of employment issue is at once easier of disposition and expositive of the facts, we deal with it first. Berry was the President of Berry Engineering Corp. and Berry Contracting Co. [2] The firms, apparently operated together, were involved in heavy industrial contract work, and Berry as chief executive officer was the main salesman, business procurer and spokesman for the companies. In such capacity he frequently entertained prospective customers. This was done most often at his ranch, incorporated as the Circle B and designed particularly for this purpose with the large and convivial lodge supplied with—among other things—about 40 rifles and shotguns for the use of guests.

The fatal accident occurred while Berry was preparing to embark on a business trip which would carry him near to the ranch. He had decided to take a rifle along in the hope that either he or his assistant could return it to the ranch from whence it had been borrowed by a guest. While he was attempting to place the gun in the baggage compartment of the plane, it discharged inflicting wounds from which he died the next day.

In the light of the liberal construction given to the Act, this evidence, briefly summarized, is sufficient to sustain the verdict of the properly charged jury that Berry was within the scope of his employment at the time of the accident. See Employers Mut. Liab. Ins. Co. of Wisconsin v. Sanderfer, Tex.Civ.App. writ ref'd n. r. e., 1964, 382 S.W.2d 144.

Although the question of coverage is more complicated, we are equally as certain that, resolved as it was by the jury, this too must be resolved against Aetna. There were two Aetna policies issued on the Berry Companies of relevance. Both came to Aetna from the Texas Assigned Risk Pool. The first which we shall call the 1960 policy was for one year from August 24, 1960. The second, the 1961 policy, substantially identical to the one involved in this case, went into effect December 28, 1961 for one year's coverage. Berry died on March 28, 1962. From the evidence, the jury could find that the Berry Companies intended that Berry should be covered and paid the proper premiums [3] under both policies. On the other hand, it seems equally clear that those acting for Aetna did not think they were covering him. But this is not determinative. The question for us is the legal one whether by its actions or those of its agents, Aetna did cover him.

While it is true that the Texas Workmen's Compensation Act [4] excludes from the definition of "employee" for whom the benefits of the Act flow mandatorily, the president and other officers of

---

* Of the Second Circuit, sitting by designation.

1. The amount as calculated under the Texas Workmen's Compensation Act was $16,927.09.

2. We refer to these as the "Berry Companies."

3. Aetna tendered the premium paid for Berry under the 1961 policy as a refund after his death.

4. Vernon's Ann.Tex.Civ.Stat.Ann. art. 8309, § 1a.

a corporation, insurance companies may afford voluntary coverage to a corporate officer if the contract of insurance or other contractual basis so provides. Superior Ins. Co. v. Kling, 1959, 160 Tex. 155, 327 S.W.2d 422; Houston Fire & Cas. Ins. Co. v. Parker, Tex.Civ.App. writ ref'd n. r. e., 1960, 341 S.W.2d 495; Hanover Ins. Co. v. Holleman, Tex.Civ. App. writ ref'd n. r. e., 1963, 372 S.W.2d 554.

■ The question for us is the one stated in the Kling case:

"* * * [A]lthough respondent [manager of the business] does not bring himself within the terms and conditions of the * * * Act, are the facts here such that would authorize the construction of this policy as a special contract of insurance covering the respondent and awarding him the benefits and indemnity provided in the policy and measured by the provisions of the Act?" 327 S.W.2d at 424.

The conclusion in Kling, based on a clear statement in the application by the broker that the executive officer was to be covered plus retention of the premium by the insurer, was that the insurer was "estopped to deny that it intended to provide protection to [the executive] by special contract of insurance, * *." 327 S.W.2d at 425. At the outset we recognize that the facts showing estoppel in our case are not as strong as in Kling. The jury, however, by answer to special interrogatories, F.R.Civ.P. 49(a), found estoppel and we conclude that the facts are strong enough to sustain the application of the rule of that case to our own.

On its face the 1960 policy offers no indication that Berry was to be covered.[5] Texas form TX–1 was attached as an endorsement to this policy and provided as follows:

"It is agreed that such insurance as is afforded by the policy by reason of the designation of Texas in Item 3 of the Declarations does not apply to injury, including death resulting therefrom, sustained by the president * * * of the Insured, * * *, except such officers or directors, if any, as are named below or in Item 4 of the Declarations; * * *."

No officers were named "below" nor did any of the Declarations in Item 4 in any way suggest executive officer coverage. But Berry's salary was reported monthly under "Outside Salesmen" set off by the manual premium code number "8742" and the appropriate premium was paid each month. These monthly reports sent to Aetna's Dallas office were on an Aetna form entitled "STATEMENT OF WAGES EXPENDED For Interim Premium Adjustment."[6]

■ The Berry Companies made this report of estimated premiums. Sometime in January of 1962, or perhaps shortly before, the Aetna payroll auditor, James Devlin, came to the Companies' office to make an audit to determine the correctness of the wage reports and compute the necessary adjustments to arrive at a final premium report. He performed this audit in accordance with his standing instructions which included the "Audit Requisition Card." The particular card was not produced, but Devlin testified that generally the card would

---

5. The application for the 1960 policy was not put into evidence.

6. A typical report would show:

| "CLASSIFICA-TIONS | STATE | POL. YR. | PAY-ROLL | CODE | RATE | PRE-MIUM |
|---|---|---|---|---|---|---|
| OIL OR GAS | TEX. | 60 | $22,292.89 | 3719 | 6.49 | $1,446.81 |
| CONTRACTOR'S | | | 1,684.00 | 8227 | 1.86 | 31.32 |
| Clerical Office | | | 1,435.48 | 8810 | .10 | 1.44 |
| Outside Salesmen | | | 800.00 | 8742 | .32 | 2.56" |

(Emphasis supplied).
The $800 salary was entirely attributable to Berry.

list the coverages with reference to the code and endorsements. Since the "Outside Salesmen" wages reported under Code 8742 was not formally consistent with the 1960 policy and, perhaps, the requisition card, the jury may have thought the auditor must have been particularly alerted to this item. The Companies' worksheets from which the monthly reports were prepared would, of course, have to be examined.[7] These worksheets remove all doubt that "Outside Salesmen * * * 8742" (note 6, supra) refers to the salary paid L. E. Berry. Indeed for the majority of the year, his salary was the only one referrable to Code 8742. For at least one month's report, the worksheet column was headed, "L. E. Berry 8742." Thus the auditor, an employee and agent of Aetna, with the express duty of approving or disapproving of the premium computations and classifications, must be charged with the knowledge that under the 1960 policy, coverage was sought and premiums were paid for Berry who was reported as an outside salesman,[8] even though coverage of Berry as an executive officer did not appear on the face of the policy. Devlin's Premium Adjustment report dated January 16, 1962, included "Salesmen * * * 8742" with a premium of $37.14 which was retained by Aetna. Had the audit determined Berry was not covered, hence no premium due, a credit would have been allowed.

The 1961 Aetna policy was likewise issued pursuant to an application made to the Assigned Risk Pool. Item 3C of the application listed Lawrence E. Berry as President and 85% stockholder of the Companies. In the space for insertion of the coverages desired, by code and classification of operation, was listed: "8742 Messengers & *Executive Officers varies*" (emphasis supplied).

At the bottom of the last page of the application form were the words: "THIS POOL CANNOT ASSIGN: Voluntary Compensation Insurance * * *." But this legend does not help us. It means only that the Pool cannot require an insurer to cover those not required to be covered under the Act. However, the insurer, even though not obligated to do so, may by its own action voluntarily provide coverage to one—such as an executive officer—whom the Act excludes from the mandatory provisions.

Aetna issued the policy. Like the 1960 policy, it had a TX–1 endorsement (see text preceding note 6, supra) with no names listed beneath it, but when we turn to Item 4 as TX–1 instructs, we are referred to an attached schedule listing the classifications of operation. The last classification was "Salesmen, collectors or messengers 8742," and the premium rate was as specified in the application. Just as under the 1961 policy, the Berry Companies prepared monthly statements of wages expended (see note 6, supra). And as in the past, Berry's salary was reported under the caption "Salesmen, collectors * * * 8742." This was done for all three months the policy was in effect prior to Berry's death.

We have said above that Aetna through its agent-auditor Devlin was charged with knowledge (at the latest by the middle of the first month of the

---

7. Auditor Devlin had no independent recollection of the details of this particular audit, but the jury could credit the testimony of Mrs. Boyce who prepared the worksheets and the monthly wage report and who testified that the auditor always examined the worksheets.

8. In reporting Berry under "Outside Salesmen * * * 8742," Mrs. Boyce understood she was complying with the applicable Texas Compensation Manual, p. R12c, No. 6:

" * * * The entire payroll so developed of each Executive Officer shall be assigned without division to the classification which is applicable to the actual operations in which the Executive Officer is primarily engaged."

So, if covered as Mrs. Boyce obviously thought he was, Berry would be reported merely as an outside salesman under Code 8742.

1961 policy term) that the Berry Companies desired and had in fact paid for coverage of Berry as a salesman—which he was—under Code 8742. By applying for coverage of "Executive Officers * * * 8742" and accepting a policy stating coverage existed for "Salesmen * * * 8742," it is apparent that the Berry Companies sought, and thought they had obtained, the same kind of coverage for this valuable man as under their first, 1960, policy with Aetna. And the jury was entitled to believe that Aetna knew it. This is enough to create a special contract of insurance under the Kling case.

That the communication from the Berry Companies to Aetna was not in words express goes only to the weight and clarity of the message, but it does not mean that no contract came into existence. Of necessity, the law has long recognized the efficacy of non-verbal communications. From the formation of contracts by an offeree's silence, nod, hand signal "√" or "x" on an order blank to the doctrine of admission by silence, the law has legally realized that to offer guidance and comment meaningfully on the full range of human conduct, cognizance must be taken of communications other than by words. Symbols for words often suffice. Lawyers and Judges live by them,[9] as the citation to this very case may sometime demonstrate. "8742" was such a symbol. Aetna's knowledgeable agent knew what Aetna meant and whom it meant. It was just the next and easy step for the jury to conclude that Aetna knew that when the Berry Companies said "Salesmen 8742" or "Executive Officer 8742," they were talking about no one but Lawrence E. Berry. The Kling case, by which we are

bound, says this kind of conduct estops the insurer to deny coverage by special contract of insurance. So said the jury There it ends.

Affirmed.

---

9. We bandy around numbers to convey complex ideas and problems. Witness § 8(a) (3) (discharges), § 8(a) (5) (failure to bargain), § 301 (union suits), § 341(a) (collapsible corporations), § 61 (gross income), § 1221 (capital asset), § 2255 (post conviction), § 2283 (state court comity), § 7 (Clayton Act), § 1 (b) (natural gas exemption), X–10–B(5) (S.E.C. Fraud), § 70(c) (strong arm). With zip codes, area codes, account numbers, and all the other marks of this binary computerized world, it will be more so in the future.