**MURRAY CORPORATION OF MARYLAND, Appellant,**

v.

**Huey J. BROOKS, Appellee.**

**No. 1279.**

Court of Civil Appeals of Texas, Tyler.

May 22, 1980.

Rehearing Denied June 20, 1980.

898

John H. Minton, Potter, Guinn, Minton, Roberts & Ireland, Tyler, for appellant.

R. Ernest Swift, Swift, Swift & Lawrence, Palestine, for appellee.

SUMMERS, Chief Justice.

This is a suit involving Huey J. Brooks' alleged wrongful discharge from his employment with Murray Corporation of Maryland.

Huey J. Brooks (Brooks) filed suit against Murray Corporation of Maryland (Murray) claiming that Murray, in violation of Tex. Civ.Stat.Ann. art. 8307c,[1] discharged Brooks because he instituted worker's compensation proceedings. Brooks prayed for damages against Murray for this wrongful discharge. Murray answered with a general denial together with a specific denial that Brooks' filing of a worker's compensation claim or initiating a worker's compensation proceeding had anything to do with his discharge. Murray further alleges that Brooks' discharge was based upon the following:

1. Murray had, during the time of the surgery to Brooks, and his recovery therefrom, sustained a severe reduction in its business, product orders and work force due to a severe downturn in the economy and the severe gasoline shortage of the time, rendering it unnecessary for defendant to have or need as many drivers as it previously had, and Brooks was discharged from the payroll as being the driver then employed having the least seniority.

2. Brooks had sustained a severe back injury, due in part to spondylolisthesis, a condition not due in any degree to his work for Murray, and had surgery thereon, in which his spine was fused in part. Due to such injury and surgery, Brooks could not perform the usual and regular duties of a truck driver without assistance in loading and unloading and driving, and without danger and further injury to himself.

3. Brooks at the time of his discharge had been on the payroll of defendant in leave of absence status for more than six months, and under the terms of the employee handbook of Murray under which plaintiff was hired and employed, his rights of seniority terminated, with defendant having the option to extend such period.

The case was tried before a jury. In response to special issues submitted, the jury found as follows:

1. Huey Brooks was discharged or discriminated against because he instituted proceedings under the Texas Worker's Compensation Act (Special Issue No. 1);

2. $24,460 would compensate Brooks for his loss of wages between March 5, 1975, and April 17, 1978; and $540 would compensate Brooks for loss of contribution for retirement and medical benefits between March 5, 1975, and April 17, 1978 (Special Issue No. 2).

Pursuant to the jury's verdict, the trial court entered judgment against Murray for $25,000. Murray filed a motion for judgment non obstante veredicto, or in the alternative, a motion to disregard findings on

---

1. Art. 8307c. Protection of claimants from discrimination by employers; remedies, jurisdiction

Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

Sec. 3. The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act. Acts 1971, 62nd Leg., p. 884, ch. 115, Aug. 30, 1971.

Special Issue No. 2 and for additional express findings. After the motions were overruled, Murray perfected this appeal.

We affirm.

Brooks was employed as a long haul truck driver by Murray at its plant in Palestine, Texas. In January, 1974, Brooks, while in the course of his employment, was involved in an unavoidable accident which involved his truck, another truck, and a car. In this accident Brooks sustained a severe hand injury, and as a result, could not work for approximately six months. Brooks filed a worker's compensation claim in connection with this hand injury. He also hired an attorney to represent him in connection with such claim. The claim was settled, and after a release from his attending doctor, Brooks returned to work.

Approximately eight weeks later on August 5, 1974, Brooks was involved in another work-related accident. While unloading his own truck at Murray's warehouse in St. Louis, Missouri, Brooks sustained a severe injury to his back. He was placed in the care of Dr. Leland G. Wilcox, an orthopedic surgeon, who performed a spinal fusion operation on Brooks in an attempt to alleviate some of the back pain Brooks was experiencing. Brooks filed a worker's compensation claim in connection with his back injury and hired an attorney to represent him in such claim.

Following this surgery, Brooks was granted a six-month leave of absence by Murray. At the end of this six-month period three managers of the Palestine plant met (managers' meeting) and decided that Brooks' leave of absence should not be extended another six months and that he should be discharged. Brooks' name was removed from the employee roll on March 5, 1975. Brooks was never called back to work by Murray, and he was never given a reason for his discharge.

Murray predicates this appeal upon three points of error. Its first point of error contends that the trial court erred in overruling Murray's motions for instructed verdict, its objections to the submission of Special Issue No. 1, and its motion for judgment non obstante veredicto, because there was no evidence of probative force in the record that Brooks was discharged or discriminated against as a result of his initiation of worker's compensation proceedings. We cannot agree with Murray's contentions and therefore overrule the first point of error.

Special Issue No. 1 inquired of the jury whether Murray had discharged or in any other way discriminated against Brooks because he had initiated worker's compensation proceedings.

Rule 301, T.R.C.P., reads in part: "Upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and . . . the court may, upon like motion and notice, disregard any special issue jury finding that has no support in the evidence." It follows that a jury finding may not be disregarded if there is any evidence of probative force, which with proper inferences arising therefrom will reasonably support it. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273, 276 (1958); *Frost National Bank v. Nicholas and Barrera*, 534 S.W.2d 927, 932 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534, 537 (Tex. Civ.App.—Tyler 1979, writ ref'd n. r. e.).

In order to sustain a motion for judgment non obstante veredicto, a trial court must determine that there is no evidence having probative force upon which the jury could have made the findings relied on. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962); *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979). In passing upon these points we must consider the evidence in a light most favorable to the jury findings, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Burt v. Lochausen*, supra; *Grundmeyer v. McFadin*, 537 S.W.2d 764, 768 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *Schrader v. Artco Bell Corp.*, supra; Rule 301, supra.

At the time Brooks was discharged, Mike Sunday (Sunday) was the general manager of Murray's plant located in Palestine, Texas. His oral deposition was taken on May 27, 1976, by Carl T. Black. During the course of this deposition, Sunday was asked whether Brooks' worker's compensation claims were considered at the managers' meeting. During trial Mr. Black testified that Sunday gave the following answer in his deposition:

Q. [by Brooks' attorney] All right. Back on or about May the 27th, 1976, did you have occasion to transcribe some oral depositions taken in this case, the case styled Huey J. Brooks versus Murray Corporation of Maryland?

A. On May the 27th is the day we took the depositions, Mr. Swift.

Q. And when did you transcribe them and certify to them?

A. I frankly don't remember. It would be on my certificate.

Q. By looking at your certificate, can you tell us?

A. I signed this on the 18th day of June, 1976.

Q. I will ask you this question from the typed deposition, if I may, and you read me the answer that you have on your shorthand notes.

A. All right, sir.

Q. The question is to Mike Sunday. Question: "How much did you all figure it had raised your Workmen's Comp. rates by virtue of these claims that Huey had filed?"

A. Answer: "Well, to tell you the truth, no consideration was given to the actual amount, if any, as a result of discharging Huey Brooks, *It was a consideration*." (Emphasis ours.)

The record further reveals that prior to trial of this case, Brooks filed a request for admissions and interrogatories in which Murray was asked in Interrogatory No. 3 to state the facts that it claimed justified the discharge of Brooks. In this regard, Murray filed its first reply on May 13, 1976.

Prior to this date Brooks had not been given any reason for his discharge. Murray's first answers to Interrogatory No. 3 were as follows:

A. The Plaintiff, Huey J. Brooks, has been involved in several work related accidents. It was the conclusion of the Defendant that he was more than usually accident prone. That continued employment would result in further injury to him and further responsibility and liability to Murray Corporation.

B. Plaintiff, Huey J. Brooks, is afflicted with a congenital back condition aggravated by industrial injuries to the extent that he is more than ordinarily susceptible to injuries in the course of his employment creating a danger to the health and welfare of the Plaintiff, Huey J. Brooks, and exposing Murray Corporation to unreasonable risks of liability with respect to such anticipated injuries.

C. Plaintiff, Huey J. Brooks, by virtue of a congenital back condition and the industrial injuries thereto rendered him unable to do the usual and customary job of a truck driver for Murray Corporation due to limitations in his ability to lift, bend, stoop and otherwise perform the duties of a truck driver.

D. Plaintiff, Huey J. Brooks, has been on leave of absence from Murray Corporation for more than six months and under the terms of the employee handbook of Murray Corporation, under which Mr. Brooks was employed, an option exists in Murray Corporation to extend his employment in such case. In view of the facts set forth in items A, B, and C above, Defendant Murray Corporation elected not to extend his employment.

On June 7, 1976, almost one month later, Murray filed a supplemental answer to Interrogatory No. 3 which stated:

E. Murray Corporation had, prior to the discharge of Huey J. Brooks, and

continuing after such discharge, sustained a severe reduction in its business, product orders, and work force, and general economy had also sustained a severe downturn, rendering it unnecessary for defendant to have as many truck drivers as it then had, and Huey J. Brooks was discharged as being the driver with the least seniority.

Relevant to Murray's answer A above, the evidence shows that Brooks was only involved in two work-related accidents, and one of these was unavoidable. The other accident, in which Brooks hurt his back, would not have happened if Brooks' truck had been loaded properly as he had requested. It was undisputed at trial that Brooks has never been accident prone.

Relevant to Murray's answers B and C above, Dr. Wilcox testified that Brooks did not have a congenital back condition, and he never told anyone that it was a congenital back condition. Dr. Wilcox also said that according to his last report on March 18, 1975, Brooks was advised to use his back in any manner he wished. Dr. Wilcox further testified as follows:

Q. All right. Doctor, in connection with the job of Huey Brooks as a truck driver and his ability to lift, bend and stoop, would you have an opinion based on reasonable medical probability as to his ability to perform these duties at this time?

A. At which time?

Q. Well, in March and April of 1975, we'll say.

A. From what the patient has related to me in my office, it is my opinion that he could do any type of manual labor he wishes to try.

Q. All right, sir. If the people from Murray called you, that's what you told them?

A. That's what I would tell them, this is my record.

Q. State whether or not, doctor, you had an opinion in March and April of 1975 as to whether or not in reasona-

ble medical probability, Huey Brooks was more than ordinarily susceptible to injuries in the course of his employment due to his prior injury and back condition?

A. No, sir.

Q. You do have an opinion, do you not? First of all, do you have an opinion on that?

A. Yes, sir.

Q. What is that opinion, sir?

A. Well, from discussing with the patient and follow-up in my office in relation of what he could do and assuming that he had a solid fusion which I presumehe (sic) did have, it would be my opinion that he would be no more susceptible to back injury than anyone else.

Relevant to Murray's answer D above, John L. Martin, the national director of personnel for Murray, testified that if an employee is seriously injured on the job, conceivably that employee will be off work more than six months.

Contrary to Murray's answer E above, there was testimony that at the time Brooks was discharged, Murray's business was of a seasonal nature and therefore the number of employees varied according to the season. Employees who were laid off during the off season were usually rehired in the good seasons.

The record reveals that Brooks and Mrs. Kathryn Pelham were the only employees of Murray's Palestine plant who filed any substantial worker's compensation claims in 1974 and 1975, and neither of them was ever called back to work after the alleged recession was said to be over in August 1975. At the time Brooks was discharged there were two other full-time truck drivers and one part-time truck driver employed at Murray's Palestine plant. During the last week of August 1975, Murray had a total of four full-time truck drivers and one part-time truck driver. Thus, two new full-time truck drivers had been hired between March 5, 1975, the date of Brooks' discharge, and August 1975. However, Brooks was never called back to work.

Jim Turner, local traffic manager for Murray's Palestine plant, was present at the managers' meeting. Brooks testified that after his discharge he called Turner and asked him about the letter of discharge received from Murray, and Turner said he did not know anything about Brooks being fired. Turner also said he would check on it and call Brooks back, but he never called. Brooks further testified that about a week later he saw Turner and asked him if he ever found out anything about the letter. Turner just said, "The only thing I know is if it came from Baltimore." Turner testified that when Brooks called him, he "did not have a reason for Brooks' discharge other than the managers just decided at that time."

John Martin stated that if Dr. Wilcox had told the representatives of Murray that Brooks was in good shape to come back to work, then he should not have been discharged. The record reveals that two weeks after Brooks' discharge, Murray sent the Industrial Accident Board a supplemental report on Brooks' injury. This report stated that Huey Brooks was taken off the payroll 3–5–75, and that at that time Dr. Leland Wilcox said Huey would be able to return to work in about two to three weeks. This report was signed by Pam White, secretary to Travis Compton, Murray's local personnel manager.

It is undisputed that everyone present at the managers' meeting knew Brooks was making worker's compensation claims, and that payment of worker's compensation claims by the insurance company would raise Murray's insurance rates.

Under these circumstances, we cannot agree with the contention that there is no evidence from which the jury could have concluded that Brooks was discharged or discriminated against because he instituted worker's compensation proceedings.

It was the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." *Stephenville, N. & S. T. R. Co. v. Shelton*, Tex.Com. App., 208 S.W. 915, 916. *Lockley v. Page*, 142 Tex. 594, 180 S.W.2d 616, 618 (1944). *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 815 (Tex.1979).

■ Under the rules that we must follow in an n. o. v. case, we hold that there is some evidence (more than a scintilla) having probative force upon which the jury could have made the findings relied on. Although there is evidence in the record tending to explain or justify actions by appellee, we must consider the evidence in a light most favorable to the jury findings, considering only the evidence and the inferences which support the verdict and rejecting the evidence and inferences which are contrary to the verdict. The trial court may render a judgment n. o. v. only when a directed verdict would have been proper. *Smith v. Texas Pipeline Co.*, 455 S.W.2d 346, 351 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). It would have been error to instruct a verdict of the evidence raised any material fact issue. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex.1977). Since there is evidence of probative force, Murray's first point of error is overruled.

■ Under the second point of error, Murray contended that the evidence was insufficient to establish that Brooks was discharged or discriminated against because he instituted proceedings under the Texas Worker's Compensation Act. Although this point contends there was "insufficient evidence" to support the jury finding and that such finding is "against the overwhelming weight and preponderance of the evidence," the point is based on the actions of the trial court in overruling: (1) Murray's motion for instructed verdict; (2) its objections to the submission of Special Issue No. 1; and (3) its motion for judgment n. o. v. Such an attack necessarily constitutes a "no evidence" point as opposed to an "insufficient evidence" point. *Travelers Insurance Company v. Williams*, 378 S.W.2d 110, 112 (Tex. Civ.App.—Amarillo 1964, writ ref'd n. r. e.);

*Fox v. Boese*, 566 S.W.2d 682, 684 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.). We must therefore disregard the second point as its legal effect is identical to Murray's first point, namely: there is no evidence to support the jury's finding that Brooks was discharged or in any way discriminated against as a result of his initiation of worker's compensation proceedings.

■ Murray's third point of error challenges the legal and factual sufficiency of the evidence to show that Brooks' discharge was a proximate cause of any damage to Brooks (found by the jury in answer to Special Issue No. 2). This point was worded as follows:

> The trial court erred in overruling Defendant's objection to the submission of Special Issue No. 2 and its motion to disregard the jury's finding on Special Issue No. 2 because there was no evidence or alternatively, insufficient evidence of probative force that plaintiff's discharge was a proximate cause of any damage to the plaintiff, and that a jury's affirmative finding to such effect, would be so clearly against the overwhelming preponderance of the evidence as to be clearly wrong and manifestly unjust.

There is no requirement in the statute (art. 8307c) that the violation (Brooks' discharge) be a proximate cause of the damage suffered by an employee; instead it only requires that the damages suffered be a result of the violation. Therefore insofar as appellant's point would require a showing of "proximate cause," we deem same to be without merit. Inasmuch as Murray seems to recognize in its brief that appellee must prove only that he suffered damage "as a result" of the violation, we will address this point as if Murray is challenging the legal and factual sufficiency of the evidence to show that Brooks' damage resulted from the violation (Brooks' discharge).

■ If a point of error begins with the words "The trial court erred in overruling . . . ." and refers to one of the four prejudgment motions set out in Judge Calvert's Texas Law Review article "*No Evidence and Insufficient Evidence Points of*

*Error*" 38 Tex.L.Rev. 361, 365 (1960), as a procedural basis for legal sufficiency complaints, the point of error cannot be considered a factual sufficiency challenge even if it contains "great weight" or "insufficient evidence" language. *McDonald v. New York Central Mutual Fire Insurance Co.*, 380 S.W.2d 545 (Tex.1964); *Francis v. Herrin Transportation Co.*, 473 S.W.2d 664 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ); *Houston Maritime Association v. South Atlantic & Gulf Coast District of I. L. A.*, 367 S.W.2d 705 (Tex.Civ.App.—Houston [1st Dist.] 1963, no writ); *Hardy v. C. P. I. Sales, Inc.*, 511 S.W.2d 89 (Tex.Civ.App.— Houston [1st Dist.] 1974, no writ). Since Murray's third point of error began with the words "The trial court erred in overruling" and referred to its objection to the submission of Special Issue No. 2 and its motion to disregard the jury's finding to Special Issue No. 2, we must consider this a "no evidence" point.

■ In determining the "no evidence" point, we are required to consider only that evidence and those inferences that will support the court's findings in a light most favorable to such findings,. and must reject all evidence and inferences contrary to the findings of the trial court. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Special Issue No. 2 asked the jury to determine what sum of money would reasonably compensate Huey J. Brooks for his damages sustained as a result of this discharge or other discrimination.

The record reveals that after Brooks was discharged he went into the bait business. This business required Brooks to bend, stoop and drag a seine net in creeks and rivers to catch the bait. Brooks testified that his back did not give him any problems while conducting this business.

Brooks testified that he talked with Gene Kimbrew at M–Co Mud Company about a truck driving job with this company. Kimbrew told Brooks that there was no need for him to come back as M–Co Mud Company would not hire him because of his previous back injury. Brooks also testified that

he applied for truck driving jobs with Nolen Swabbing Company and Copeland Well Service. He further testified that he had sought employment as a roughneck in the oil fields. Brooks stated that he made no other attempts to find a truck driving job because he felt most companies would inquire into whether an applicant had made any worker's compensation claims and would not hire anyone who had previously sustained a back injury. The record reveals that when Brooks began working for Murray, the application form asked him whether he had received any worker's compensation for injuries. At that time Murray also sent a letter to Brooks' former employer, Texize Chemical Company, and among other things asked if Brooks had received any worker's compensation at any time.

In January 1976 Brooks began working as a prison guard for the Texas Department of Corrections at the Coffield Prison Unit in Anderson County, Texas. His beginning salary was $673 per month. He worked six months and was raised to $780 per month. After working there a year his salary was raised to $820 per month. Brooks got a merit raise in September 1977, and his salary was raised to $860 per month. He received a promotion in May 1978, and at the time of trial was making $958 per month.

The record reveals that in the two years before Books sustained his injuries, he earned the following sums: 1972—$13,-046.71; 1973—$12,632.00. Brooks was injured in 1974, and due to his injury he only earned $3,026.61 that year. Then, after he was discharged by Murray, Brooks had a loss of $1,000.00 in 1975; earned $8,388.35 in 1976 and $10,112.00 in 1977. The record further shows that a full time truck driver for Murray averaged the following wages: 1975—$16,829.45; 1976—$17,133.33; 1977—$19,247.45.

In light of the evidence adduced, we have concluded that there is evidence of probative force to support the jury's answer to Special Issue No. 2. Consequently, point 3 is overruled.

Having considered all of Murray's points of error and believing them to be without merit, the same are overruled.

The judgment of the trial court is affirmed.