**PRODUCERS CHEMICAL COMPANY,**
Appellant,

v.

**T. H. McKAY et al., Appellees.**
No. 7061.

Court of Civil Appeals of Texas.
Amarillo.

May 29, 1961.

Rehearing Denied July 3, 1961.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Merchant, Fitzjarrald, Poole & Merchant, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellees.

CHAPMAN, Justice.

This is an appeal from a judgment based upon a jury verdict in favor of T. H. McKay and T. U. Adkins, plaintiffs below and appellees here, against Producers Chemical Company, appellant here, in separate suits for damages for personal injuries suffered allegedly as the result of appellant's negligence, joining as an additional defendant in each suit Tri-State Insurance Company, also an appellee here. The first two named appellees will be hereinafter referred to as McKay and Adkins, plaintiffs or appellees. Producers Chemical Company will be hereinafter referred to as Producers or appellant. The named insurance company will be referred to as Tri-State. McKay and Adkins brought Tri-State into the suit upon allegations that it, as compensation carrier for Canadian River Drilling Company, had paid compensation to and medical expenses for McKay and Adkins, who were "roughnecks" on a drilling crew working for the drilling company just named. The drilling company will be hereinafter referred to as Canadian River. Tri-State answered by pleading its subrogation rights and alleging its position in the case was as a plaintiff. The court consolidated the two cases and following the jury verdict in favor of McKay for $75,000 and Adkins for $45,000 rendered judgment in favor of McKay for $64,786.66, for Adkins in the amount of $36,011.70 and for Tri-State for $19,201.64, the total of the last three equaling the sum of the first two.

Upon assignments of excessiveness remittiturs were required to reduce the final judgment in favor of McKay and Adkins respectively to $34,786.66 and $21,011.70.

In its first group of points appeal is predicated upon the jury's affirmative answer to Special Issue No. 3, which inquired of the jury if any employee of the defendant company permitted its compressor to pump oil into its outlet line at the time and place in question and then if so if such was negligence and a proximate cause of the explosion.

On the day of the explosion that resulted in the injuries to McKay annd Adkins Canadian River was in the process of drilling an oil and gas well in Roberts County, Texas, and the two men just named were at the time working as members of the drilling crew. On the day of the explosion, March 13, 1959, Canadian River was drilling with "air". In doing so they were utilizing a small compressor belonging to Well Completions of Denver, Colorado and operated by Lloyd Jones. They had been having trouble unloading the hole because of insufficient power generated by Well Completions' small compressor so Mr. Sears, representing Canadian River, went to Miami, Texas and called Producers to send its air compressor to help unload the hole. Appellant responded by sending an

Ingersoll-Rand compressor, which the evidence shows was a very old machine, and three men, McDonald, the operator, and two helpers. The evidence also shows that Producers had used the compressor on wells for Canadian River previous to the time in question.

Producers' employees, with McDonald as the operator, placed the large Ingersoll-Rand compressor in line between the small compressor and the line leading to the metal stand pipe on the rig floor and hooked it up to the Canadian River mud line. Appellant's compressor was fed air by the small compressor at a maximum pressure of 120 pounds. After appellant's compressor was started and stopped twice because it was not registering any pressure McDonald, after working on it and adding oils to various areas, including the Manzell oiler, started it the third time. That time it built up a steady pressure until it reached approximately a 1,000 pounds. After 30 to 40 minutes of continued operation the third time it was started, an explosion occurred which blew to bits the metal stand pipe on the rig floor, resulting in the injuries to McKay and Adkins.

Under its first five points appellant seems to contend that it violated no duty toward McKay and Adkins in the pumping by its compressor of oil into the outlet line that led to the explosion because such pumping of oil was inherent in the compressor itself that was ordered by Canadian River; that there is neither any nor sufficient evidence that any of Producers' employees were negligent; and that the court erred in overruling its objections pertaining to Producers' duty and in failing to submit its Requested Issue No. I. That issue and its component parts sought to inquire if Canadian River requested Producers' compressor and crew; if the compressor brought was the one ordered; if defendant was directed by Canadian River with respect to the purpose and manner of the compressor's use and in such event, if, at the time of the accident, Producers was using its compressor for the purpose and in the manner it had been so directed. This group of issues also asserts a fatal conflict between the jury's finding of negligence on the part of Producers and the finding that if there was negligence on the part of anyone in the use of Producers' compressor, for the purpose and in the manner in which it was being used, it was the negligence of either Canadian River or Well Completions, or the two in combination.

■ We cannot agree with appellant's projected theory and believe the record here compels a conclusion that as the supplier of the chattel, [the air compressor] Producers owed plaintiffs a duty of furnishing a compressor which was not defective [leaking oil through the pistons into the outlet line]. Especially do we believe this to be true in the absence of proof that Canadian River or plaintiffs knew, or in the exercise of ordinary care should have known, the chattel was defective; and in the absence of proof that the compressor in a non-defective state was "inherently dangerous", like explosives or poisons. There is not any evidence of probative value that the chattel in a non-defective condition, was "inherently dangerous" or of knowledge of Canadian River or McKay and Adkins that it was defective, or that in the exercise of ordinary care they should have known it was defective. There is no question from the record but that Mr. McDonald, Producers' employee, was operating the compressor without direction from anyone as to the mechanical method of its operation. The machine was obviously a very old one. The purpose of the Manzell oiler was to lubricate the valves and rings of the cylinder heads and communicate oil directly to the piston area. Instead of just performing that function the unit permitted the pint of oil that McDonald placed in the Manzell oiler just before the explosion to escape into the outlet line.

Appellant seems to contend it is absolved of liability because Mr. Sears ordered the particular compressor with complete knowledge of the compressor and for the exact use to which it was being placed. Even if it should be said that he ordered the par-

ticular machine [1] there certainly is no evidence that he had "complete knowledge of the compressor", or any knowledge that it leaked oil. The record is completely silent as to any knowledge on the part of Mr. Sears or either of the plaintiffs as to the mechanical condition of the machine on the day in question. Producers' president, Mr. Watkins, is a geologist, and he knew that the mixture of oil, pressure and air would cause an explosion. He also knew the compressor was an old one, very likely around 30 years old. His maintenance equipment manager, Mr. Lewis, when asked what some of the things were that could cause *that* compressor to leak oil said, "The bad seals and gaskets on the con rod covers and on the cross shafts." [2]

Our Supreme Court in Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 102 has written on the duty of suppliers of chattels in a case with facts somewhat analogous to our own. The plaintiff there, as McKay and Adkins here, was an employee of a drilling company. That derrick collapsed, injuring the plaintiff. The Supreme Court said, *"A duty of inspection to forestall personal injury exists on the part of one who supplies chattels to another for a use in which the supplier has a business interest and extends to the servants of an independent contractor to whom the chattel is supplied * * * The fact that an identical duty exists on the part of the independent contractor as master of the servant in question ' * * * does not, however, relieve from liability the original supplier of the chattel who by his failure to inspect it has permitted it to go out of his hands in a dangerous condition.'"*

In applying the law of the cited case to the facts before us we hold the duty evolved upon appellant as the supplier of the chattel to inspect the compressor to see that it was not defective before tendered for the use for which it was supplied. We also hold that the trial court did not commit reversible error in overruling defendant's objections 1 and 2 to the court's charge and failing to submit its Requested Issue No. I. The objections mentioned go to the lack of breach of duty on the part of appellant, which we have already said the record requires us to resolve against its contentions. We believe what we have already said also disposes of appellees' Requested Issue No. I. It is our opinion that the pronouncements of Roosth & Genecov would have required a judgment for McKay and Adkins under this record in any event because of appellant's duty of inspection to forestall personal injury. Even after Producers' employee, McDonald, learned the oil was escaping he continued to operate the compressor. There is not any evidence that any of the employees of Canadian River or Well Completions, Inc. knew of the defective condition which permitted the leak of oil that contributed to the explosion.

■ This leaves in this group of appellant's five points only the contention of a fatal conflict between the jury's finding of negligence on the part of Producers and the finding that if there was negligence on the part of anyone in the use of Producers' compressor for the purpose and in the manner it which it was being used it was the negligence of either Canadian River, Well Completions or the two in combination.

We think it is important here to note the manner of submission of the issue appellant insists conflicted with the negligence finding against it. In the first place the jury did not find Well Completions, Canadian River or a combination of the two negligent. They simply found that *if* there was negligence on the part of anyone in the use of appellant's compressor *for the purpose* [unloading the hole] and *in the manner in which it was being used* [pumping air in combination with

---

1. We do not believe the testimony is clear that Sears ordered a particular machine. Rather, we believe it shows he simply wanted a large compressor that would unload the hole.

2. All emphasis shown in this opinion are ours unless otherwise designated.

Well Completions to unload the hole] such negligence was that of either Canadian River, Well Completions, or the two in combination. We find no conflict in the affirmative answer to this issue and the affirmative finding of negligence of appellant in supplying a defective chattel and that such negligence was a proximate cause of the injuries. Anyhow there was a negative answer to the proximate cause question conditionally submitted upon Issue 6 just discussed. Additionally, the jury found with Canadian River and Well Completions on the sole proximate cause issue as to whether the injuries lay in the use by either of them or a combination of the two of the particular procedure they were following in their effort to unstick the well and remove its contents. Since McKay and Adkins could sue any tort-feasor whose negligence proximately caused their injuries the finding on the sole proximate cause issue against Producers left support for the judgment in favor of appellees on the negligence found against appellant. Landers v. East Texas Salt Water Disposal Co. et al., 151 Tex. 251, 248 S.W.2d 731; Kirby Lumber Corp. et al. v. Walters et ux., Tex.Civ.App., 277 S.W.2d 796.

■ In its next group of points appellant urges the "borrowed servant" doctrine as a defense, viz. that in the particular operation to which the jury's verdict attributes the accident Producers' employee had become the borrowed servant of Canadian River. We believe these points to be clearly without merit. McDonald, the operator of the compressor, was Producers' general employee both prior to and at the time of the accident. He had been reared in the oil fields and had worked for appellant six years in various capacities. McDonald's superior, on behalf of Producers, told him their company had a job to do with the compressor and where the rig was located. Before leaving McDonald repaired a leaking water line. The compressor unit, even though very old, was a large, expensive and complicated piece of equipment. McDonald had' operated for appellant previously but never with "air" before. McDonald selected two fellow employees of Producers to assist him and these men set the unit up for work; he then sent them on errands with no direction or control from Canadian River. After hooking up between Well Completions and the standpipe on the rig McDonald directed the small compressor operator to start up so he could blow out the scrubber tank on the large compressor. Neither appellees nor Canadian River, through any of their employees, had anything whatever to do with the mechanical operation of either compressor or with controlling the scope or details of the operations performed. Canadian River was simply interested in the result—unloading the hole. Lloyd Jones, the operator of the small compressor, took no orders from Canadian River nor did he see or know of their giving orders to any of Producers' employees. McDonald and his two co-employees were paid by Producers at all times material to this case and it deducted their social security, withholding taxes, insurance, and pension trusts, and McDonald was being paid at the time to do the exact job he was doing at the time of the explosion. There is not any probative evidence whatever that the details of the manner and method of operating the compressor toward the end sought was under the control or supervision of Canadian River. Even though Sears for Canadian River was in charge of the general aspect of the work [unloading the hole] such position does not imply, nor does the evidence show he had control over details of the operation designed toward the desired result. Such position when considered in the light of the evidence here was not sufficient to change the status of McDonald from an employee of Producers [3] to a "special or loaned" employee of Canadian River and hence the facts do not call for an application of the

---

3. Producers selected and employed him, paid his wages, determined his hours of work, how and where he should do it, and had the exclusive right to discharge him.

"borrowed servant" doctrine. Insurors Indemnity & Insurance Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217; Herndon v. Halliburton Oil Well Cementing Co., Tex. Civ.App., 154 S.W.2d 163; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Riggs v. Haden Co., 127 Tex. 314, 94 S.W.2d 152; Dempster Mill Mfg. Co. v. Lester, Tex.Civ.App., 131 S.W.2d 254.

■ Appellant next raises the point of assumed risk and volenti non fit injuria [one who consents cannot receive an injury]. The trial court viewed the question as one of fact and submitted it to the jury as to whether the hazard that there might occur the accident which did in fact occur or some similar accident was known to McKay and Adkins or that in the exercise of ordinary care such hazard should have been known. The jury answered all such questions favorable to appellees.

There is clearly no evidence that McKay and Adkins knew anything whatever about the compressor or that its mechanical condition was such that it would leak oil into the outlet line. The record shows appellees had never worked with "air" while helping to drill an oil and gas well and had nothing whatever to do with the air compressor in question. Only McDonald of those working at the well had knowledge of the defects of the compressor and that it was leaking oil. Producers' maintenance foreman testified the oil in the line could have resulted from defective seals and gaskets on that compressor and its president agreed the ingredients to produce an explosion were present. Therefore, we cannot agree with appellant that the hazard that some injury might result from the operation which was being performed was at least as open and obvious to McKay and Adkins as it could have been to Producers. Our Supreme Court in McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 394 said:

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger *which he either does or should fully * * * appreciate.*"

It cannot be reasonably contended that the jury's verdict in this respect is against the overwhelming weight and preponderance of the evidence and that these two "roughnecks" on a drilling crew could or should have foreseen that the explosion and injuries furnishing the basis for this law suit might result from the operation which was being performed.

■ Appellant next contends in its brief that the record was without competent testimony for submission to the jury and the findings thereon of recoverable damages of either lost earnings on the date of the accident to the date of trial or future impaired earning capacity of McKay and Adkins.

We believe our Texas authorities going back as far as 1908 compel an opposite conclusion to the contention just stated. We realize the evidence is never the same in any two cases and that each case stands on its own, but we believe the evidence before us in this record is more than sufficient to justify the submission and findings complained about.

The testimony shows McKay was 57 years of age and had been working for Canadian River approximately a month as a roughneck; *he had followed oil field work all his life;* at the time of the explosion he was earning $1.60 per hour, working 8 hours a day, 7 days a week; both men testified they were earning approximately $100 a week and McKay stated he had been earning that kind of money for many years; he had not earned anything since his injury; and he suffered an 85 per cent loss of hearing as the result of the explosion, was industrially deaf, and a medical doctor would not pass him for an examination to do oil field work, which trade he had followed all of his life. It is true that on cross examination he testified he had no recollection of what he made or when he worked in any particular year. We do not completely understand the reason for the answers given on cross examination

but we believe it very likely that McKay was irritable from the terrific physical and emotional punishment he received in the explosion and did not wish to be subjected to a cross examination or else the explosion seriously impaired his memory. In any event we believe the court was required to submit the issues and the jury could accept or reject any part of McKay's testimony they decided was true or not true.

Though Adkins suffered only 35 per cent loss of hearing he testified he would be afraid to work on a drilling rig because of the alertness required to work and live at the same time in such endeavor. He also testified he attempted to find employment in a grocery store and was rejected.

Under the authority of Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 1908, 101 Tex. 515, 109 S.W. 918 and Triangle Cab Co. v. Taylor, Tex.Civ.App., 190 S.W. 2d 755, affirmed at 144 Tex. 568, 192 S.W.2d 143, we hold the testimony was sufficient for the submission given by the court and the response made by the jury thereto. The Sup.Ct. in the Motwiller case just cited said:

"Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power, and is not intended in itself to establish a fixed measure of damages." [101 Tex. 515, 109 S.W. 920.]

Appellant urges the case of Bonney v. San Antonio Transit Co., Tex., 325 S.W.2d 117 as decisive of the points here under discussion. In that case there was not any probative evidence to indicate either the amount of plaintiff's earnings or a monitory measure of his earning capacity prior to the injuries. We believe it is easily distinguishable on the facts to the instant case. Accordingly, we hold the testimony supports the submission of the elements here complained about and the points are accordingly overruled.

■ The next point urged by appellant is that it was entitled to an instruction to the jury of the burden imposed upon McKay and Adkins of minimizing their damages by corrective surgery and use of hearing aids. Among its five objections to the court's directory instruction with respect to the elements of damages the jury might consider was one for failure to charge that the law imposes upon the party the burden of minimizing his damages. As applicable to Adkins it was with respect to a hearing aid recommended by Dr. Streit and as to McKay it was with respect to surgical relief.

Considerable contention is made between the parties as to whether the point was preserved, since only an objection was made and no explanatory instruction tendered by appellant. We hold the point was preserved by the objection, which clearly and distinctly pointed out to the court as required under Rule 274 Vernon's Ann.Texas Rules, the matter to which it was objecting and the grounds of its objection. Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W. 2d 1000; Yellow Cab & Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92. However, we are of the opinion no reversible error was committed in the failure to give the instruction.

McKay was made industrially deaf by the explosion and can never hold an oil field job again, the only work he has ever done in his life in earning a living. We see no way under this record that surgery could possibly correct his disability to perform the usual tasks of a workman. If it could be said that it might reduce his future suffering we believe the trial court has corrected any error by requiring a remittitur of 40 per cent of the amount of the jury verdict, he having required a reduction of the jury verdict from $75,000 to $45,000.

We also believe there is no reversible error as to Adkins in the record on this point. His recovery was reduced by a required remittitur of $33\frac{1}{3}$ per cent—from $45,000 to $30,000. Rule 434 V.A.T.R. provides:

"No judgment shall be reversed on appeal and a new trial ordered in any

cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case * * *."

The reduced judgments are the ones appealed from and we cannot say they were improper.

■ Appellant next contends in its brief that reversible error was committed in oral argument by Mr. Merchant, one of the attorneys for appellees, when he attributed to McKay a loss of earnings, both past and future, which the evidence did not sustain. The statements on which reversible error is urged were deductions made by counsel as to damages suffered. Counsel had stated, "*If* you accept the wages that he was making at the very day when he got hurt, he was making approximately $3,500 per year." Objection was sustained to that argument. Counsel then stated the evidence showed McKay was making $1.10 per hour, working 8 hours a day, 7 days a week. Objection was renewed and this time overruled. Counsel then said: "All right. If he had earned $3,500 per year, at the end of—and his ability to work had been destroyed, at the end of one year he would have lost $3,500. If his ability to work, and he continued to earn the same for a period of ten years, he would have lost $35,000. And over a 20-year period he would have lost $70,000. All right, sir. Then suppose we assume pain and suffering is worth something."

We find no reversible error in this record on such arguments. In the first place counsel each time argued "*if* he had earned $3,500 per year" he would have been damaged certain amounts. Secondly, McKay himself testified he was earning $1.60 an hour instead of $1.10, a figure mentioned by

Mr. Merchant. If he was earning a $1.60 per hour, 8 hours a day, 7 days a week he would have been earning approximately $4,600 a year by working all the time, $1,100 more than Mr. Merchant mentioned. We are not unmindful of the testimony McKay gave on cross examination, which has been related in the discussion of another point. However, the jury may accept all, part, or none of the testimony of witnesses.[4] This being true it appears to us that counsel might have argued a higher sum than the $3,500 here complained about without being subject to reversible error. It is well settled in Texas that counsel may make reasonable deductions and conclusions from the evidence. 41B T.J.1961 Pocket Parts, Trial—Civil Cases, Section 235, page 279 and cases there cited.

■ Appellant next asserts error for the court's refusal to permit it to offer part of the deposition of Sears to the effect that Canadian River, of which he was president, carried its compensation with Tri-State. He was not called as an adverse witness, nor as a witness at any time, and only parts of the deposition were offered. Even in the parts of the deposition tendered, Mr. Sears said he did not know if Tri-State had paid compensation benefits to the employees of Canadian River and did not know the manner in which Canadian River might be affected by Tri-State's ability or inability to get back in the damage suits the money it had expended. We hold the tendered statements were immaterial and irrelevant and that the court properly refused them. Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811.

The next point urges error in jury misconduct with respect to a quotient approach of the jury to the verdict and reference in the jury room to insurance and attorneys' fees. There is some testimony by some jurors to the effect that each juror wrote down a certain figure, totaled them, and divided by 12 to use as a starting point. Several jurors testified the amount of dam-

4. Coastal Transmission Corp. v. Lennox et al., Tex.Civ.App., 331 S.W.2d 778, 783.

ages awarded was not the result of the average initially used as a starting point and one juror did not even recall the quotient approach.

On the question of attorneys' fees one juror testified that attorneys' fees were just mentioned, that they were told they could not consider them and the subject was dropped.

On the question of insurance one juror testified that in his opinion insurance was not mentioned. Another stated it was mentioned but they were immediately told they were not to consider insurance and the discussion was dropped.

There is clearly no reversible error shown under this point. Considering the quotient approach it has been textually stated in 41B T.J.Trial—Civil Cases, Section 317 as follows:

> "A preagreement to the effect that the division should constitute the verdict is essential to show misconduct in such respect. Such agreement may be express or implied. *It is permissible, however, to pursue this method if there is no agreement beforehand to adopt the quotient as the verdict, and if the quotient is to be used merely as a basis for further discussion.* And this is true even though the quotient is subsequently agreed upon as the amount of the verdict."

■ The most favorable view that could be taken for appellant from the jurors' testimony given on the question of jury misconduct is that such testimony was conflicting. The court's implied findings on an issue of jury misconduct where such findings were made from conflicting evidence is binding on an appellate court. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62.

■ The 18th and last point urged by appellant is error of the court in permitting Tri-State's counsel to actively participate in the trial of the case. We find no reversible error in the procedure. McKay and Adkins had able counsel with many years of successful experience in the trial of damage suits. Even if it was error for Tri-State's counsel to participate we see no possible way appellant could have been injured or such participation could have caused the rendition of an improper verdict. Rule 434 V.A.T.R. would require us to hold the point is without merit.

McKay and Adkins by cross assignments have urged error of the court in requiring them to file the remittitur heretofore discussed. We believe what we have already said disposes of the cross assignments and they are accordingly overruled.

The judgment of the trial court is in all things affirmed.