**PARAGON HOTEL CORPORATION and Spokane Equities, d/b/a El Paso Airport Hilton, Appellants,**

v.

**Lorenzo RAMIREZ, Appellee.**

**No. 08–89–00085–CV.**

Court of Appeals of Texas, El Paso.

Dec. 13, 1989.

Opinion After Entry of Remittitur Jan. 3, 1990.

Rehearing Overruled Jan. 10, 1990.

R. Wayne Pritchard, Ginnings, Birkelbach, Keith & Delgado, El Paso, for appellants.

Enrique Moreno, Moreno & Fry, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

Appellee, Lorenzo Ramirez ("Ramirez"), brought suit for damages for wrongful termination of his employment as a houseman by El Paso Airport Hilton ("Hilton") in violation of Article 8307c of the Texas Workers' Compensation Act. Appellants, owners and operators of the Hilton, appeal from an adverse judgment on a jury verdict for past and future mental anguish, future lost wages and exemplary damages. We reverse and remand, subject to a remittitur.

Prior to his employment at the Hilton, Ramirez had been working at a Holiday Inn under Beverly Russell. When Russell became head of housekeeping and laundry at the Hilton, she asked Ramirez to come to work for her there. He did so in June 1986, at a starting salary of $3.50 an hour. After a probationary period, his salary was raised to $4.00 per hour. On March 26, 1987, Ramirez suffered a compensable work injury to his back as a result of a fall while stripping a bathroom floor. The back injury involved extensive loss of time, off and on, from March through November 1987, and ultimately resulted in a ten percent permanent bodily impairment. He sustained a second injury, this time to his eye, on May 17. The latter injury did not involve lost time and the worker's compensation claim was limited to medical expenses alone. In both instances, the compensation reports and claims were prepared by Hilton's personnel director, Cindy Sieman. Neither claim was questioned by the compensation insurance carrier.

Ramirez was experiencing continuing difficulty with his back and although he attempted several times to resume work, further examinations by his attending physician, Dr. Heydemann, produced notes that he was not to resume work for certain periods of time. Sometime while this was going on, Russell left and Tilly Ochs became Ramirez's supervisor. She was responsible for scheduling his work hours and assignments. He was to deliver any medical excuses from work to her. Ramirez testified that although she accepted these notes and adjusted his schedule, she at times conveyed irritation with his repeated absences for medical reasons. On one occasion, while at work, Ramirez was asked how he was feeling by Sieman. According to his testimony, when he replied that he was not feeling well, she stated that his trouble was "in his head."

By letter dated and delivered on September 15, Ramirez's employer was notified that Ramirez was released to return to work on October 5. At that time, Ochs reassigned him to duty in the laundry, which Appellants summarily characterize as a light duty assignment. Ochs testified that she intended to place him in a less demanding job, although she admitted that certain aspects, loading and unloading wet sheets, involved significant physical effort. Ramirez testified that his hours were also reduced, an assertion challenged by Ochs with support from work schedule documents. He complained about his shortened hours to the Hilton general manager, Rich Cain, who would not talk to him but referred him to Sieman. Cain had been courteous and had talked to him in the past. Ramirez experienced increased pain in his back and was unable to report for work on October 25, a Sunday. He testified that he called the office in advance and told Lisa Schmaltz, an employee who answered the phone, that he was physically unable to come in. Ramirez stated that

she told him it was all right as long as he brought in a note from the doctor and she would relay the message to Ochs. Ochs was not on duty at the time. She testified that she received no such message through Schmaltz. The next day, October 26, Ramirez visited Dr. Heydemann who gave him a note that he was unable to work and would be reexamined in two weeks. He took the note to Ochs that day. Ochs testified that: (1) she verbally warned him that he was in violation of the hotel rules for not giving prior notice or absenteeism on October 25 and 26; (2) he did not mention having called Lisa Schmaltz; (3) she told him she would schedule his next shift for November 11, two days beyond the two week period indicated by Dr. Heydemann; and (4) if he still was unable to work then he was to notify the hotel prior to his shift reporting time. Ramirez testified that she simply took the note, but gave no verbal warning and did not tell him when his next shift would be. He did not know when he was supposed to return to work, but assumed that this would be decided after his next examination in two weeks.

On November 10, Ramirez was examined by Dr. Heydemann and was given another note indicating that he would be unable to return to work until further notice, with another examination scheduled in one month. He did not call in or report for duty on November 11. On November 12, he arrived at 9:27 a.m. and delivered the latest note. Ochs accepted the note without comment and Ramirez left. Ochs testified that she took the note to Sieman and recommended dismissal, based upon the October 25 failure to report, as well as the events of November 11 and 12. Sieman concurred and drafted a termination letter, which Ochs signed. The letter, sent by certified mail, arrived on November 13. Ramirez was confined to bed at the time and the mailman had to deliver the letter to the bedroom for his signature. Ramirez's wife had to translate the letter from English to Spanish. At the time, Ramirez's wife was seven or eight months pregnant, and the couple had no other source of income. The termination was very distressing, forced the couple to borrow money

from relatives and raised the specter of divorce. Their child was subsequently born in February 1988. At approximately the same time, Ramirez was released to return to work. He obtained a temporary job for six weeks in May and June, installing glass at $6.00 per hour in a new shopping center. At the time of the trial in November 1988, he had obtained a part-time job as a busboy at the Holiday Inn where he had previously worked, with a salary of $3.35 per hour. He was still on probationary employment and did not know if he would obtain either permanent or full-time status.

The jury concluded in answers to special issues that the filing of the worker's compensation claim was a reason for the termination and awarded compensatory damages as follows: past lost wages, $3,610.00; past mental anguish, $100,000.00; future lost wages, $62,400.00; and future mental anguish, $200,000.00. Upon the further finding that the Appellants acted willfully and maliciously, the jury awarded $200,-000.00 in exemplary damages. Only the amount of past lost wages is not contested on this appeal.

Appellants bring sixteen points of error, most of which present legal and factual insufficiency challenges to the jury's findings and awards. In reviewing the legal sufficiency, or "no evidence," challenge, this Court must examine only that evidence and reasonable inferences therefrom which, viewed in the most favorable light, support the verdict. If such evidence amounts to more than a scintilla, that is more than a basis for mere surmise or suspicion, then the legal sufficiency challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). The factual sufficiency challenge is evaluated by reviewing all of the evidence and reasonable inferences therefrom and should be sustained only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In making the evaluation, the appellate court may not simply substitute

its judgment for that of the fact finder in the lower court, particularly with regard to assessing the credibility of the witnesses. *Clancy v. Zale Corporation,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

In this case, the evidentiary review of Question No. 1, wherein the jury found that the filing of a worker's compensation claim by Ramirez was a cause or reason why he was discharged, entails a determination of the adequacy of Ramirez' proof of a causal link between the termination and the filing of the claim. *Azar Nut Company v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), aff'd, 734 S.W.2d 667 (Tex.1987). Appellants' cited authority, without exception, contrasts the evidence in this case with cases affirmed on the basis of direct evidence of such causal connection. This is of little help in assessing the evidence in a case, such as this, involving circumstantial evidence. The proof in a wrongful termination case need not be direct. Circumstantial evidence and reasonable inferences from the evidence may provide adequate support for the jury's affirmative finding. *Hunt v. Van Der Horst Corporation,* 711 S.W.2d 77, 80 (Tex.App.—Dallas 1986, no writ); *Luna v. Daniel International Corp.,* 683 S.W.2d 800, 803 (Tex.App.—Corpus Christi 1984, no writ); *Santex, Inc. v. Cunningham,* 618 S.W.2d 557, 560 (Tex.Civ.App.—Waco 1981, no writ); *Murray Corporation of Maryland v. Brooks,* 600 S.W.2d 897, 903 (Tex. Civ.App.—Tyler 1980, writ ref'd n.r.e.).

The evidence in this case is sufficient to withstand both the legal and factual insufficiency challenges. Such evidence consists of: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward Ramirez's injured condition; (3) failure to adhere to established company policies with regard to progressive disciplinary action; and (4) discriminatory treatment of Ramirez in comparison to other employees allegedly guilty of similar infractions.

It is uncontested that Sieman knew of Ramirez's two compensation claims. She filed the paperwork and personally dealt with the carrier representative. She approved Ochs' recommendation of termination and drafted the letter for Ochs' signature. Although Ochs denied direct knowledge of the claims, when confronted with her pretrial deposition, she admitted that: (1) when she started work in August 1988, she was aware that two of her assigned workers (including Ramirez) were out on medical leave due to injuries, and (2) she assumed that these involved worker's compensation injuries. The jury was free to accept this assumption as her actual state of mind, despite later efforts by the defense to dilute this admission by having her acknowledge that an employee might be excused from work due to injuries that were not work related. Thus, actual knowledge by Sieman and a correct assumption by Ochs concerning the pending claim could have been readily considered by the jury. As in *Luna,* 683 S.W.2d at 803, and in *Texas Steel Company v. Douglas,* 533 S.W.2d 111, 117 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), there was evidence of a negative attitude on the part of Ochs and Sieman toward Ramirez' injured condition, his doctor's evaluations and the resulting disruption of his availability for work. While both Ochs and Sieman denied these manifestations, the jury was free to reject their denials and accept Ramirez's testimony as the more credible.

In several of the above cited cases, support for the finding of liability was found in company practices which in themselves could be taken as a desire on the part of management not just to reduce job injuries but to discourage claims. Similar evidence in this case is reflected in a game called Safety Bingo, instituted by the hotel, explained by Sieman in her testimony. On February 6, 1987, Sieman circulated a memorandum explaining the rules of the game. Each employee was issued a paper bingo card. For each injury-free day, a random bingo number was posted by the time clock. Prizes of $2.50 to $40.00 would be awarded for various forms of bingo. If there were an accident involving no lost work time, no new number would be drawn for one week; the injured employee and his

supervisor would be suspended for the remainder of the game. If an injury involving lost time occurred, that game would be terminated for all employees; the injured worker and his supervisor were precluded from participating in the next game as well. This "game" did not simply provide an incentive for safety, but provided significant pressure on the injured employee himself and from fellow employees and supervisors not to report injuries or file compensation claims. Sieman acknowledged that the hotel management felt that the game might discourage the reporting of job-related injuries "and the game was discontinued for a while." See *Hunt,* 711 S.W.2d at 80.

Evidence of subterfuge in the motivation for Ramirez's discharge is reflected in testimony and documentary proof from which the jury could have reasonably concluded that the Hilton management did not follow its own published personnel policies regarding progressive disciplinary procedures. These policies were set out in an employee handbook. Both Ochs and Sieman acknowledged the progressive disciplinary action format but contended that such action did not apply to the discharges under the "attendance/tardiness" rule. The jury could reasonably reject this explanation for the reason that the section dealing with "attendance/tardiness" merely recites the rules for absenteeism, tardiness, advance notice and presentation of medical excuses. It provides that violation of such rules may be grounds for "discharge without recourse to the grievance procedure...." The procedure for pursuing such violations to termination, however, still seems to be governed by the progressive action format set out in the "Hotel Rules" and "Corrective Action" sections. Excessive absenteeism and tardiness, and failure to give proper notice of these, are specifically listed as "Section Two Rules." Under Corrective Action, it is provided that:

2. A regular employee [such as Ramirez] who violates a 'Section Two' rule will receive a verbal warning for a first offense.

3. A subsequent violation will result in a written warning.

4. If a regular employee receives three written warnings during a twelve month period, they may be suspended with a recommendation by their supervisor that they be terminated.

Plaintiff's Exhibit No. 15 is the "Disciplinary & Termination Report" pertaining to Ramirez and maintained in Appellants' files. There were no entries in the spaces provided to record the dates of a verbal warning, a written warning and disciplinary suspension. Even accepting Ochs' testimony that she gave Ramirez a verbal warning on October 26, the immediate leap to termination deviates substantially from the progressive system set out in the handbook and reflected on the termination report. The jury, however, was free to reject Ochs' claim and believe Ramirez's testimony that there was no verbal warning, supported by the absence of any notation on the termination report. The instructions on the reverse side of the report repeat the progressive scale of disciplinary action:

All discharges should have prior warning and signature of a final warning prior to the discharge unless the reason is gross misconduct: (Theft, destruction of company property, threaten the health or safety of others).

██ The jury could further conclude that Appellants not only deviated from the established progressive disciplinary scheme, but utilized a strained interpretation of the absenteeism and tardiness rules in assigning a reason for Ramirez's discharge. According to Ochs and Sieman, Ramirez did not report or give advance notice of absenteeism on October 25 and November 11. (Of course, the October 25 incident was subject to jury determination that Ramirez did in fact give prior notice to Lisa Schmaltz, as he claimed). On October 26, he was scheduled to work at 7:00 a.m. but reported sometime later in the morning after his appointment with Dr. Heydemann. On November 12, he was scheduled to work at 8:00 a.m. but reported at 9:27 a.m. October 26 and November 12 were treated by Ochs and Sieman as absence days, despite the fact that Ramirez arrived late and had uncontested medical excuses for not working at all those days. Although the

employee handbook at times refers to absence and tardiness as though the two acts of misconduct are treated the same, the jury was free to reject any redundancy and accept the common difference in the definitions of the two words. Accordingly, they could conclude that Ramirez was at most guilty of absenteeism on October 25 and November 12. The provision relied upon by Sieman and Ochs states that grounds for dismissal may consist of being "absent without leave for two (2) or more consecutive days." The alleged misconduct would not then match the dismissal guidelines relied upon by Appellants. Proof that the stated reason for discharge is false and that established employee policies were not followed in the termination process are probative of an improper motivation in the dismissal. *Santex*, 618 S.W.2d at 560; *Murray Corporation*, 600 S.W.2d at 901–903.

Finally, there is the evidence of disparate treatment of other employees similarly situated. Ramirez presented several individual disciplinary records indicating that other employees supervised by Ochs and Sieman were not terminated until three consecutive days of work had been completely missed. In two instances, individuals were given second chances. One of these was a female employee who had missed four weekend shifts utilizing fabricated excuses. The other was an individual who missed three consecutive days due to being incarcerated in New Mexico on a DWI charge.

From the foregoing, we conclude that there was ample circumstantial evidence from which the jury could reasonably infer that Ramirez was discharged at least in part as a result of his worker's compensation claims. Points of Error Nos. One and Two are overruled.

■ Points of Error Nos. Three and Four assert legal and factual insufficiency of the evidence to support the award of $100,000.00 for past mental anguish. Appellants are correct in asserting that mental anguish requires more than mere disappointment or anger. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 803–804 (Tex.App.—Dallas 1987, no writ). Ap-

pellants' characterization of the evidence in this case is less than candid, however, in claiming that the testimony merely reflected that Ramirez "felt bad" and "looked sad." Ramirez was already in significant and repeated pain from his back injury. At the time, he received the certified letter of termination, he was bedridden. This unanticipated letter had to be delivered to his bedroom for signature. His wife then had to translate the message into Spanish. Ramirez's wife was ill and in her seventh month of pregnancy. They had no other source of income. Her doctor was pressuring her with regard to prenatal medical care at a time when their finances were already stressed. They were forced to borrow money from relatives. The wife characterized the situation as desperate. The termination placed such a strain on the marriage that preliminary steps toward divorce were taken. This is far beyond the dissatisfaction and inconvenience experienced by the plaintiff in *Town East* and certainly provides some evidence of mental anguish. Once that level of evidence has been established, the translation of such injury into a dollar amount is necessarily an arbitrary process, not subject to objective analysis. *Brown v. Robinson*, 747 S.W.2d 24, 26 (Tex.App.—El Paso 1988, no writ). In reviewing jury decisions on such awards, appellate courts must be even more careful not to supplant the fact finder in the litigation process. Points of Error Nos. Three and Four are overruled.

■ Points of Error Nos. Five and Six present legal and factual insufficiency challenges to the award of $200,000.00 for future mental anguish. In opposition to Appellants' argument, Ramirez argues that the testimony about the ten percent permanent disability to his back assigned by the doctor and the uncertainty of his future employment status gives rise to a natural inference of future mental anguish, sufficient to support a jury award. Ramirez offered no evidence that at the time of trial or in the future he was suffering or would suffer the type of economic, health or marital stress he had suffered immediately following the termination. The mere uncer-

tainty as to whether his current employment with Holiday Inn would become more secure and lucrative does not reach the minimum threshold of mental anguish. *Town East,* 730 S.W.2d at 803; *Brown,* 747 S.W.2d at 26. Points of Error Nos. Five and Six are sustained.

■ In Point of Error No. Seven, Appellants complain of the court's refusal to submit to the jury a requested instructional definition of mental anguish. The only cited authority, *Trevino v. Southwestern Bell Telephone Company,* 582 S.W.2d 582 (Tex.Civ.App.—Corpus Christi 1979, no writ), does not stand for the proposition that such a definition of this every day expression should be included in the jury instructions. The law of Texas is to the contrary. *Trotti v. K–Mart Corporation No. 7441,* 686 S.W.2d 593 (Tex.1985); *Murphy v. Waldrip,* 692 S.W.2d 584, 590 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). We overrule the seventh point of error.

■ In Points of Error Nos. Eight and Nine, Appellants pose legal and factual sufficiency questions to the jury's award of $62,400.00 in lost future wages, which for our purposes is taken to be synonymous with loss of future earning capacity, although we recognize a difference. At the time of termination, Ramirez was receiving wages of $4.00 per hour. At the time of trial, he was twenty-six-years-old and had obtained part-time employment at a beginning wage of $3.35 per hour. No expert or other testimony was offered concerning a loss of employment compensation expectancies under his employment with Appellants for comparison with such expectancies in his current job. No evidence was offered concerning his life expectancy or his general state of health prior to the compensable injuries that led to his termination.

■ Evidence of life expectancy would have been helpful but is not necessary. The jury may reach its own conclusion on life expectancy based on its knowledge of such matters, where the injuries are permanent, the age of the injured person is known and there is evidence concerning his health and physical condition prior to the injury. *Chemical Express v. Cole,* 342

S.W.2d 773, 778 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). While the amount of damages resulting from an impairment of earning capacity must be left largely to the sound discretion and judgment of the jury, nevertheless the jury should not be left to mere conjecture where the facts upon which the jury could base an intelligent answer could be readily obtained. *Bonney v. San Antonio Transit Company,* 160 Tex. 11, 325 S.W.2d 117 (1959). While Ramirez did present some evidence of lost future wages through the demonstrated wage and hours differential at the time of trial, based on part-time work still within a three month probationary period, too much is left to the conjecture of the jury as to wage and hour expectancies. Ramirez offers no real authority for the paucity of evidence proffered as an adequate basis for the award. His citation to *A.J. Foyt Chevrolet, Inc. v. Jacobs,* 578 S.W.2d 445 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ), with the suggestion that it was Appellants' burden to quantify these damages is inapplicable. There, the burden was on the defendant employer due to the defensive theory of the plaintiff's failure to mitigate damages. Ramirez may find some support for his position in such cases as *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710 (1943); *Beverly Enterprises, Inc. v. Gaines,* 652 S.W.2d 600 (Tex.App.—Waco 1983, no writ); and *Producers Chemical Company v. McKay,* 348 S.W.2d 91 (Tex.Civ.App.—Amarillo 1961), aff'd, 366 S.W.2d 220 (Tex.1963), but a close reading of those cases indicates a sufficiency of evidence within the context of the particular fact situation. As was stated in *McKay,* 348 S.W.2d at 96: "We realize the evidence is never the same in any two cases and that each case stands on its own...." Having found some evidence to support the finding, the "no evidence" challenge under the eighth point of error is overruled. The absence of sufficient evidence on present and future wage and hour expectancies under the peculiar facts of this case draws us to the conclusion that the jury was unnecessarily deprived of sufficient information from which to calculate future lost

wages with reasonable certainty. Where a party fails to establish an essential element of the proper measure of damages, the case must be reversed and remanded for a retrial of all issues, since the damages are unliquidated and liability was contested. *Thomas v. Morrison,* 537 S.W.2d 274 (Tex. Civ.App.—El Paso 1976, writ ref'd n.r.e.); Tex.R.App.P. 81(b)(1). Appellants' ninth point is sustained.

In their tenth and eleventh points, Appellants challenge the sufficiency of the evidence that Sieman and Ochs acted willfully or maliciously. Both of these employees testified that they knew it was wrong to discriminate against an employee for filing a worker's compensation claim. As shown above and as concluded by the jury, the evidence reflects that this is exactly what they did, that they employed a subterfuge excuse for discharge to cover this illegality, that they deviated from established company disciplinary policies in reaching the termination and that they did not afford Ramirez the same pre-discharge opportunities granted to other employees. As previously noted, the evidence indicates that they expressed personal irritation with Ramirez in regard to his injured status. Under the standards expressed in *Wal–Mart Stores, Inc. v. Kee,* 743 S.W.2d 296 (Tex.App.—Tyler 1987, no writ), there was ample evidence to support the jury's affirmative answer. We overrule Points of Error Nos. Ten and Eleven.

■ Points of Error Nos. Twelve and Thirteen challenge the sufficiency of the evidence to support the award of $200,-000.00 in exemplary damages. Exemplary damages should be reasonably proportional to the actual damages assessed. In this case, the actual damages, unchallenged or affirmed by this Court, total $103,610.00. While no set ratio is recognized by the courts of this state, a two-to-one ratio does not seem so disproportionate as to indicate an award based upon passion, prejudice or disregard of the evidence. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex. 1981), affirming 586 S.W.2d 202 (Tex.Civ. App.—Waco 1979). Moreover, this record presents some additional factors which may

have been considered by the jury in their assessment of exemplary damages: the extremely vulnerable situation of Ramirez and his wife, and the fact that Appellants' behavior was offensive to public policy, as embodied in the legislative provision for worker's compensation benefits. The exemplary damage award appropriately reflects a measure of deterrence on behalf of all injured employees in this state. Points of Error Nos. Twelve and Thirteen are overruled.

In Point of Error No. Fourteen, Appellants contend that the exemplary damage award violates the prohibition of cruel and unusual punishment provided by the Eighth Amendment to the United States Constitution. This contention has now been expressly overruled in *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). The constitutional prohibition has no application to exemplary damages awarded in civil suits between private parties. The fourteenth point is overruled.

Appellants contend generally in their fifteenth point of error that the awards for past and future mental anguish, future lost wages and exemplary damages are excessive. For reasons previously stated, this point is overruled.

In their sixteenth point of error, Appellants assert that the excessive size of the judgment is contrary to public policy, especially at a time when the legislature is actively reevaluating the present status of worker's compensation in Texas. Appellants argue that such verdicts as the one in this case will have a chilling effect on business development in this community, with consequent loss of jobs and tax base. This Court is bound by the worker's compensation statutes that presently exist, as well as by the body of published case law that has interpreted and applied those statutes, not by what the legislature may do in the future. Moreover, it is entirely proper for a court judgment to have a chilling effect on violations of the law even if that may mean that some would be violators would choose not to remain or relocate within the territo-

rial jurisdiction of that court. Point of Error No. Sixteen is overruled.

In summary, we overrule Points of Error Nos. One, Two, Three, Four, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen and Sixteen. Having sustained Points of Error Nos. Five and Six (no evidence of future mental anguish) and Point of Error No. Nine (insufficient evidence of future lost wages), the judgment of the trial court must be reversed. Since an insufficiency point has been sustained, the case must be remanded for a new trial on all issues, unless Ramirez wishes to make a voluntary remittitur of $62,400.00 (the amount found as future lost wages) under Tex.R.App.P. 85(e). In the latter event, the judgment is affirmed as to damages in the amount of $303,610.00 and reversed and rendered as to the damages found for future mental anguish.

## OPINION AFTER ENTRY OF REMITTITUR

On this date, the trial court's judgment in favor of Lorenzo Ramirez is reversed and rendered by denying recovery as to the amount of $200,000.00 found for future mental anguish. After reducing the trial court's judgment by the remittitur of $62,-400.00, the remainder of the judgment is affirmed as to actual and exemplary damages in the total amount of $303,610.00 and in all other respects.