In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00035-CV


______________________________




LONE STAR STEEL COMPANY, Appellant



V.



BRIDGET HATTEN, Appellee




 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 20,919




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 On Friday, October 23, 1998, while "pulling flash" at Lone Star Steel Company (Lone Star),
Bridget Hatten noticed a pain in her right hand. (1) She reported her injury to Lone Star's medical
department the following Sunday, October 25. Lone Star arranged for Hatten to see a doctor on
Monday, October 26, and the doctor diagnosed Hatten as having a strained right hand. The doctor
also noted that Hatten could return to her regular duties, but if her condition worsened, she should
be restricted from pulling flash. From October 25 to December 7, 1998, Hatten's condition
continued to deteriorate, ultimately resulting in her inability to perform her regular duties. As a
result, Lone Star placed Hatten into the alternative work program on December 8, 1998, in
accordance with its policy and labor agreement. (2)

 Lone Star's alternative work program is available only to employees who have (1) been 
injured at work and (2) filed a workers' compensation claim. After an employee has been in the
program for thirty days, his or her medical condition is re-evaluated. If the employee's condition
has not improved, Lone Star places him or her on restricted leave without pay until medically cleared
to return to work. In the present case, Hatten was placed in the program on December 8, and her
condition was reassessed on January 7, 1999. On January 7, the doctor determined Hatten suffered
from carpal tunnel syndrome in her right hand and showed no signs of improvement. Further, the
doctor recommended Hatten undergo surgery to correct the problem. At the same time, Lone Star
learned from its workers' compensation insurance carrier, Petroinsurance, that Hatten's injury may
not have been caused at work. For those reasons, Hatten was taken out of the alternative work
program and placed on restrictive leave without pay until she was medically cleared to return. 
According to company policy, it is the employee's duty to inform Lone Star of his or her medical
status so he or she can return to work once medically cleared. 

 After Hatten was placed on restrictive leave, the Texas Workers' Compensation Commission
(TWCC) determined Hatten had received a workplace injury to her right hand and was entitled to
a lump sum back payment to compensate her from the time she was placed on restrictive leave until
the time of the TWCC decision. The TWCC also held Hatten was entitled to weekly payments until
the disability no longer existed or she reached maximum medical improvement. On or about
February 1, 2000, Hatten received a letter from Petroinsurance indicating that she had reached
maximum medical improvement, as evidenced by her doctor's examinations, and that her workers'
compensation benefits would cease. There is no evidence in the record Hatten informed Lone Star
of her ability to return to work before filing this lawsuit on February 8, 2000. After learning, through
Hatten's original petition filed in this action, that she had been cleared to return to work, Lone Star
sent Hatten a letter dated March 8, 2000, informing her a position was available and she could return
to work. Hatten returned to work and has been an employee of Lone Star throughout the duration
of this lawsuit. She has been paid the sums awarded her by the TWCC. 

 Hatten, however, claims in her lawsuit that Lone Star discriminated against her because she 
filed a workers' compensation claim. Specifically, Hatten alleged that being placed on restrictive
leave without pay constituted a violation of Section 451.001 of the Texas Labor Code. See Tex.
Lab. Code Ann. § 451.001 (Vernon 1996). After a jury trial, the trial court rendered judgment in
favor of Hatten based on a finding that Lone Star had violated the Texas Labor Code, awarding
Hatten $50,000.00 in compensatory damages and $2,000.00 in lost wages.

 On appeal, Lone Star brings the following points of error: (1) the evidence was legally
insufficient to support a finding that Lone Star violated the Texas Labor Code; (2) the evidence was
legally insufficient to support an award for compensatory damages; and (3) the evidence was legally
insufficient to support an award for lost wages.

Labor Code Violation?

 In its first point of error, Lone Star contends the evidence was legally insufficient to support
the trial court's judgment that it violated the Texas Labor Code. In reviewing a no-evidence claim,
we must consider only the evidence and inferences tending to support the trial court's finding,
disregarding all contrary evidence and inferences. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925,
928 (Tex. 1993); Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). Anything more than a
scintilla of evidence is legally sufficient to support the finding. Browning-Ferris, Inc., 865 S.W.2d
at 928. Where circumstantial evidence is relied on and the circumstances are equally consistent with
either of two facts, however, no more than a scintilla of evidence supports a finding and a legal
sufficiency challenge must be sustained. Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319,
324 (Tex. 1984). 

 Section 451.001 of the Texas Labor Code provides in pertinent part:

 A person may not discharge or in any other manner discriminate against an
employee because the employee has: 

 (1) filed a workers' compensation claim in good faith; 

 (2) hired a lawyer to represent the employee in a claim; 

 (3) instituted or caused to be instituted in good faith a proceeding under
Subtitle A; or 

 (4) testified or is about to testify in a proceeding under Subtitle A.

Tex. Lab. Code Ann. § 451.001. In order to show discrimination on the part of the employer, the
employee must establish a causal connection between the discriminating act and filing a workers'
compensation claim. Inv. Prop. Mgmt., Inc. v. Montes, 821 S.W.2d 691, 694 (Tex. App.-El Paso
1991, no writ). Circumstantial evidence, and the reasonable inferences from such evidence, can
prove the causal connection. Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654, 658 (Tex. App.-El
Paso 1989, writ denied). In determining what circumstantial evidence can provide the causal link
between the discriminatory act and filing a workers' compensation claim, courts have considered the
following factors: (1) knowledge of the compensation claim by those performing the discriminatory
act; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to
adhere to established company policies; (4) discriminatory treatment in comparison to similarly
situated employees; and (5) evidence that the stated reason for the adverse action was false. Palmer
v. Miller Brewing Co., 852 S.W.2d 57, 61 (Tex. App.-Fort Worth 1993, writ denied); Paragon Hotel
Corp., 783 S.W.2d at 658.

 Hatten contends that being placed on restrictive leave without pay constituted a
discriminatory action on the part of Lone Star. Therefore, she had the burden of proving a causal
connection between that act and filing a worker's compensation claim. Paragon Hotel Corp., 783
S.W.2d at 658. 

 1. Knowledge of the Compensation Claim? 

 When Hatten was placed on restrictive leave, she was enrolled in the alternative work
program. In order to be placed in the alternative work program, the employee must (1) have
sustained a workplace injury and (2) filed a workers' compensation claim. Lone Star was obviously
aware of Hatten's workers' compensation claim. Mere knowledge of Hatten's claim does not,
however, establish a causal link between the alleged discriminatory behavior and the filing of the
claim, but is only one factor to be considered in light of the record as a whole. See Garcia v. Allen,
28 S.W.3d 587, 601 (Tex. App.-Corpus Christi 2000, pet. denied); Urquidi v. Phelps Dodge Ref.
Corp., 973 S.W.2d 400, 405 (Tex. App.-El Paso 1998, no pet.).



 2. Expression of Negative Attitude?

 Hatten contends Lone Star expressed a negative attitude toward her injury by (1) having an
economic incentive to dispute her claim, (2) allowing an insurance adjuster to question Hatten at
Lone Star's medical department, and (3) requiring her to perform duties that were against her medical
restrictions. 

 First, Hatten relies heavily on Lone Star's insurance policy with Petroinsurance to establish
a negative attitude toward her injured condition. The policy provides that Lone Star shall reimburse
Petroinsurance for all payments made or expenses incurred as a result of a workers' compensation
claim up to the deductible amount of $100,000.00. Because Lone Star had an economic incentive
to dispute Hatten's workers' compensation claim, she contends we can make the inference that Lone
Star must have also expressed a negative attitude toward her injury. In support, Hatten relies on
Whole Foods Market Southwest, L.P. v. Tijerina, 979 S.W.2d 768, 780 (Tex. App.-Houston [14th
Dist.] 1998, pet. denied). Tijerina, however, stands for the proposition that economic incentive alone
will not support a finding for punitive damages if a violation of Section 451.001 has occurred, but
economic incentive combined with badgering of the employee and testimony that money was a factor
in terminating the employee, all of which were present in that case, could support a judgment that
the employer acted with malice in violating the Texas Labor Code. Id. In the present case, Tijerina
is not persuasive because Hatten failed to produce any evidence that, combined with economic
incentive, would support a conclusion that Lone Star expressed a negative attitude toward her
injuries. (3) Further, an employer may contest the cause of an alleged on-the-job injury and the
compensability of those injuries without violating the Texas Labor Code. Cont'l Coffee Prods. Co.
v. Cazarez, 937 S.W.2d 444, 452 (Tex. 1996). While Lone Star had economic incentive to dispute
Hatten's claim, that fact alone does not constitute an expression of a negative attitude toward her
injury.

 Second, Hatten contends Lone Star exhibited a negative attitude toward her injury by
allowing an adjuster from Petroinsurance to ask questions about her injury. Hatten claims to have
been called to the medical department, where an adjuster from Petroinsurance questioned her. 
Hatten alleges this behavior showed a negative attitude toward her injury because she was not given
adequate notice of the interview. There is nothing in the record supporting such an allegation. 
While Hatten elicited testimony from a Lone Star supervisor that Petroinsurance agents have in the
past conducted interviews at the Lone Star plant, Hatten testified her only interview with a
Petroinsurance adjuster took place at her home, and the adjuster called Hatten the day before to
inform her of the interview. In any event, we have previously stated that contesting the injury and
the compensability of the same does not constitute a violation of the Texas Labor Code, and certainly
the insurance company would have the right to ascertain the cause and extent of Hatten's injuries
before making a decision on whether to grant or deny the claim. See id. There is no evidence in
Hatten's being interviewed by an insurance adjuster that demonstrates Lone Star expressed a negative
attitude toward Hatten's injury or that Lone Star discriminated against her for filing her claim. 

 Third, Hatten contends Lone Star expressed a negative attitude toward her injury by requiring
her to perform duties that contradicted her medical restrictions. Hatten testified she was required
to pull flash even though her doctor restricted her from performing such a duty. (4) Therefore, there
was some evidence allowing the fact-finder to conclude a negative attitude toward Hatten's injury
existed. There was no evidence, however, in that event suggesting a causal link with Hatten's filing
of a claim. 

 3. Breaching Company Policy?

 Hatten contends Lone Star failed to adhere to company policy because (1) she was required
to pull flash after her doctor had restricted her from performing such a duty, and (2) she was not
immediately placed into the alternative work program after reporting her injury. First, Hatten
produced testimony from Lone Star's medical supervisor, that when an employee reports an injury,
Lone Star's policy is to provide reasonable medical care to that employee. Accordingly, she has
produced some evidence Lone Star failed to adhere to established company policy by requiring her
to work in contradiction with her medical restrictions. Again, however, there was no evidence of
any link between that act and Hatten's filing of a claim.

 Lone Star did not violate company policy by not placing Hatten into the alternative work
program immediately after she reported her injury. The alternative work program is for employees
who are not able to perform their regular duties. After Hatten's initial doctor visit on October 26,
1998, the doctor noted Hatten was free to return to her regular duties, but if her condition worsened,
she should be restricted from pulling flash. It was not until December 7, 1998, that Hatten's medical
restrictions, as indicated on her doctor's reports, prevented her from performing any of the duties at
her employment level, and it is undisputed Hatten was placed in the alternative work program on
December 8. Therefore, according to company policy, Lone Star was not required to place Hatten
in the alternative work program immediately after she reported her injury, but only when her medical
restrictions prevented her from performing any of the regular duties at her employment level, which
did not occur until December 7.

 Company policy and the labor agreement dictate that, once employees are placed in the
alternative work program, each employee's medical condition is re-evaluated after thirty days in the
program. If there is no sign of improvement, the employee will be placed on restrictive leave
without pay. Hatten has failed to produce any evidence Lone Star did anything other than follow its
established policies with regard to employees in the alternative work program. Hatten was placed
in the program on December 8, and her condition was reassessed on January 7. On January 7, the
doctor determined Hatten suffered from carpal tunnel syndrome in her right hand and showed no
signs of improvement. Further, the doctor recommended Hatten needed surgery to correct the
problem. At the same time, Lone Star learned from its workers' compensation insurance carrier,
Petroinsurance, that Hatten's injury may not have been caused at work. For those reasons, Hatten
was taken out of the alternative work program and placed on restrictive leave without pay until she
was medically cleared to return. Accordingly, Hatten failed to present any evidence Lone Star acted
in violation of company policy by placing her on restrictive leave.

 4. Discriminatory Treatment?

 Hatten contends Ronald Hawkins received similar injuries at Lone Star and was allowed to
continue working. There is nothing in the record supporting her contention. The only evidence
produced at trial with respect to Hawkins is the following testimony from Lone Star's safety
manager:

 [Counsel]: And how many of those work related carpal tunnel injuries have
you seen out there?

 [Witness]: Since '95 that I have worked with, about three or four.

 [Counsel]: Is Ronald Hawkins one of them? 

 [Witness]: Mr. Hawkins has a claim, I think, that's currently working that
that [sic] is a diagnosis, yes, sir.

 [Counsel]: And did you - have you seen him since that injury?

 [Witness]: I have seen him once, yes, sir.

 [Counsel]: And did he appear with his arms and hands and both of them
out in slings?

 [Witness]: Not at the time I saw him, no, sir.

 [Counsel]: Were you aware of that happening?

 [Witness]: No, sir, I'm not. 

 This testimony is no evidence Lone Star gave preferential treatment to another employee. 
Because there is no evidence Hawkins was a similarly situated employee, there is no evidence of
discriminatory treatment in comparison to similarly situated employees. See Wal-Mart Stores, Inc.
v. Amos, 79 S.W.3d 178, 190 (Tex. App.-Texarkana 2002, no pet.).

 Hatten has failed to present any evidence Lone Star placed her on restricted leave for any
reason other than she was no longer qualified to be in the alternative work program and she
medically could not perform her regular duties. 

Conclusion

 Based on the foregoing, Hatten has failed to establish a causal link between being placed on
restrictive leave and filing a workers' compensation claim. While requiring an employee to perform
tasks that are in contradiction with his or her medical restrictions is some evidence a negative
attitude toward the employee's injury existed, it is no evidence of any expression of such a negative
attitude when considered in light of the other factors, and it is insufficient to establish a causal link
between the alleged discriminatory behavior and Hatten's filing of a workers' compensation claim.
Because a causal link has not been established between Lone Star's allegedly discriminatory behavior
and Hatten's filing of a workers' compensation claim, there is no evidence to support the trial court's
judgment. Lone Star's first point of error is sustained. (5)

 For the reasons stated, we reverse and render a take-nothing judgment in favor of Lone Star.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 16, 2003

Date Decided: April 30, 2003


1. When steel sheets are cut and formed into tubes, some of the steel residue remains in the
tube, and workers, such as Hatten, are required to pull that residue from the tube, a process referred
to as "pulling flash." 
2. In the labor agreement between Lone Star and the labor union, each employee is assigned
a classification level according to their seniority, and there is an exclusive list of jobs that can be
performed at each level. If, however, an employee is unable to perform any of the jobs listed for his
or her classification level because of an injury suffered at work, he or she is placed into an alternative
work program so they can continue to work, performing duties that do not violate their medical
restrictions, and still receive full pay.
3. Hatten also cites America West Airlines, Inc. v. Tope, 935 S.W.2d 908 (Tex. App.-El Paso
1996, no writ), but that case is unpersuasive for the same reason. 
4. Hatten's testimony contradicted her previous statements made at trial and during her
deposition, but in a legal sufficiency review, we must disregard such evidence and consider only that
in favor of the trial court's judgment. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex.
1993).
5. Even if Lone Star had violated Section 451.001 of the Texas Labor Code, this Court, after
reviewing the record in its entirety, finds no evidence to support an award of either measure of
damages awarded below. See Tex. Lab. Code Ann. § 451.001 (Vernon 1996).